430 So.2d 1159 (1983)
SENTRY INDEMNITY COMPANY
v.
Kenneth RESTER, State Farm Fire and Casualty Company, et al.
No. 82 CA 0552.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
Arthur W. Landry, Foster, Ryan & O'Bannon, New Orleans, for plaintiff.
Iddo Pittman, Jr., Hammond, for defendant.
Before LOTTINGER, COLE and CARTER, JJ.
COLE, Judge.
The issues in this subrogation case are whether or not an insurer is subrogated by law to the rights of the insured and whether or not the father of a minor child is responsible for the child's tortious acts.
The facts are as follows: Mrs. Marjorie Bush, a 76 year old woman, resided (at least *1160 part-time) at the home of her son-in-law, Frank Bodnar. Mrs. Bush's daughter (and Mr. Bodnar's wife) was deceased. On the day of the incident in question, Mrs. Bush was at the Bodnar home babysitting her three year old great-grandson, Charles Eric Rester. While outside, Charles found a birthday candle and asked Mrs. Bush to light it so he could blow it out. They returned to the house, Mrs. Bush lighted the candle and the child blew it out. She then threw the candle into the kitchen trash can. A short while later, while clearing the kitchen table, she looked up and saw the child holding the lighted candle. She called to the child to come to her with the candle but he refused. Instead he turned and went into the next room. She put the dishes in the sink and went after the child but by the time she entered the room the sofa was on fire and her attempts to extinguish it failed.
The owner of the residence, Frank Bodnar, made a claim with his homeowner's insurer, Sentry Indemnity Co., for the loss caused by the fire. Sentry settled with Mr. Bodnar for the sum of $14,500. (The policy limits were $15,000.) No written agreement concerning subrogation was signed. Thereafter, Sentry proceeded against Kenneth Rester (Charles' father) and his insurer, State Farm Fire and Casualty Co., in order to be reimbursed.[1] Rester and State Farm filed a third party demand against Mrs. Bush, alleging she was negligent in her supervision of the child. Sentry later amended to add Mrs. Bush as a defendant.
After a trial on the merits the court concluded Sentry was entitled to recover from Kenneth Rester and State Farm and therefore rendered judgment against them for $14,500. The court found Mrs. Bush to be free of negligence and therefore dismissed the claims against her.
Rester and State Farm have appealed, arguing Sentry should not be subrogated to Bodnar's rights. Further, they contend the court erred in holding Rester liable for the torts of the child and in dismissing the third party demand against Mrs. Bush.

SUBROGATION
Appellants contend since Bodnar did not sign an agreement giving Sentry the right to subrogate his claim, Sentry has no right to proceed against Rester or Mrs. Bush.
Mr. R.D. Norton, an adjuster for General Adjustment Bureau, testified he had compromised the claim with Mr. Bodnar for $14,500, a sum which he felt was adequate compensation for the damage. He admitted Mr. Bodnar had informed him he did not wish to subrogate and no documents granting subrogation were signed. Appellants suggest in their brief that the settlement was for less than the full policy limits because of Sentry's promise not to pursue its right to subrogate. There is no evidence of this in the record.
Subrogation is either legal or conventional. La.Civ.Code arts. 2159-2161. The Sentry policy states the insurer "... may require from the insured an assignment of all rights of recovery against any party for the loss...." (Emphasis added.) The evidence shows no assignment was made and therefore no conventional subrogation occurred in this case. Legal subrogation can occur in several circumstances, only one of which is applicable here. Art. 2161 reads in pertinent part as follows:
"Subrogation takes place of right:
* * * * * *
"3. For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it."
A review of the Louisiana jurisprudence shows an inconsistency of results. One group of cases has held simply that legal subrogation occurs only when two parties are solidarily bound. See Pringle-Associated Mortgage Corporation v. Eanes, 254 La. 705, 226 So.2d 502 (La.1969), rehearing denied, *1161 1969; Harris v. Huval Baking Company, 265 So.2d 783 (La.App. 3d Cir.1972), writ refused, 263 La. 103, 267 So.2d 210 (1972).
Another case has denied legal subrogation when an insurer pays its insured medical benefits under the policy. See Courtney v. Harris, 355 So.2d 1039 (La.App. 4th Cir. 1978). There it was reasoned the medical payments were owed to the insured by the insurer regardless of the liability of a third party and therefore the insurer was not bound "with or for" any other person.
Yet another group of cases has allowed the insurer legal subrogation. In Hartford Accident & Indemnity Company v. Byles, 280 So.2d 624 (La.App. 3d Cir.1973) the insurer paid UM benefits to the insured and then sought to recover from the alleged tortfeasor. The court concluded legal subrogation had occurred and explained its reasoning as follows; p. 626:
"We think the insurer who is bound under its contract of insurance for payment of the loss or damages caused by a third party, and who is forced to pay under that contract as the result of the negligence of that party, is legally subrogated under LSA-C.C. art. 2161 to the rights of its insured against the third party tortfeasor to the extent of the payment which it was required to make." (Citations omitted.)
The court then observed it had reached a different result than it had reached previously in Harris v. Huval, supra, and distinguished the cases. It noted the disputed benefits in Harris were the medical benefits which were due the insured regardless of liability of a third party. By contrast, the court found in the case before it the insurer was not bound to pay the UM coverage until it was proven that a third party was liable for the damage. Therefore, the court concluded, the insurer was in fact bound "with or for" another and legal subrogation was appropriate.
Although this distinction (as to the type of benefits) could possibly be applied to the facts of this case,[2] we are inclined to agree with the holding in another case, Volume Shoe Corp. v. Armato, 341 So.2d 611 (La. App. 2d Cir.1977). In that case a car struck and damaged a building leased by Volume Shoe Corp. through its subsidiary, Payless Shoe Store # 380. The hazard insurer of the building, merchandise and store fixtures, paid Volume Shoe for the portion of the loss covered by its policy and later sued the driver of the automobile and her insurer. Without concerning itself as to whether or not Volume Shoe's right to the insurance proceeds was contingent upon the fault of a third person, the court cited Hartford, supra, and concluded the insurer was legally subrogated to their claim against the driver.
A lengthy discussion of this issue is found at 39 La.L.Rev. 675 (1979) in an article by H. Alston Johnson entitled "Legal Subrogation of Insurer to Insured's Rights Upon Payment of Claim." Professor Johnson reviewed the jurisprudence on the subject and noted the inconsistent results reached by the various courts. He recommended "legal subrogation should be the rule and that cases holding the contrary should be disapproved."
Johnson observed art. 2134[3] sets forth the basic rule that one who is discharging the debt of another (in his own name) is not subrogated to the rights of the creditor. He stated articles 2160 and 2161 were exceptions to that rule.[4] Johnson further disagreed *1162 with cases which had required the existence of "solidary obligors" in order for subrogation to occur under 2161(3). He argued the expression "solidary obligors" may mean "two persons are bound to the same individual for the same debt, even though for different reasons." He concluded that where a tortfeasor has caused damage he is obligated to pay those expenses, by virtue of his delict. Due to the tortfeasor's action, the insurer is in fact "bound with" the wrongdoer for these expenses and should be entitled to legal subrogation.
Finally, Johnson concluded there are compelling policy reasons to allow the insurer legal subrogation. When subrogation takes place the burden falls ultimately on the wrongdoer. In turn, the insurer's expenses are reduced by the recoupment of its loss. Theoretically this loss should be reflected in the calculation of the premiums and the insured will reap the benefits. To deny subrogation in these cases would have the opposite effect: The wrongdoer would go scot-free, the insurer would be forced to hike its rates and the insured would pay higher premiums.
For these reasons we agree with the trial court the insurer in this case is entitled to legal subrogation against Rester, State Farm, and Bush.

LIABILITY
Appellants' second argument is that the court erred in holding Kenneth Rester responsible for the tortious act of his minor child. Appellants argue it was the negligence of Mrs. Bush, rather than of the child, that caused the damage. We agree with the trial court Mrs. Bush used a reasonable standard of care when dealing with the child. Her testimony concerning the events immediately before and after the incident indicate she and the child were in the same room at all times. While she was busying herself with plates on the table the child announced to her he was "going hunting." She then looked up and saw he had the lighted candle. The following is an excerpt from her testimony on the incident.
"A. So, I called him to bring the candle to me. But, it was just three steps into the living room there and he just turned and went in there.
Q. He was holding the lit candle then?
A. Yes. I called him and told him to bring it to me, but he didn't.
Q. And you were certain the candle was lit then?
A. Yes, sir.
Q. And, then, the boy walked into the living room?
A. Yes, sir. Walked back into the living room.
Q. What happened next; did you hear him call to you?
A. Well, I had my dishes, the cereal bowls and the glasses, so I went and laid them in the sink, but by the time I laid them in the sink, he says, `Maw Maw.' and I went in there and I saw the couch, the naugahyde was on fire.
Q. Did you see smoke or fire?
A. Fire. It was fire.
Q. You saw fire?
A. Yes, sir."
When questioned further Mrs. Bush stated firmly she had placed the matches on a shelf by the sink, out of the child's reach. She theorized he must have lighted the candle by turning on the gas stove. When questioned as to how long a period of time elapsed from when he entered the living room with the candle and when she heard him call, she answered as follows:
"A. Well, it wasn't very long. I walked from the dining table over to the sink, across the dining and kitchen, it was a combination dining and kitchen. I walked from the dining table to the sink which I don't walk very fast,[5] but it wasn't very so *1163 long, you know. I can't say just how long.
Q. Now, before the boy went into thebefore the grandson went into the living room, you asked him to come to you?
A. Yes, I said, `Bring it back. Bring it to me.' The candle."
We have no difficulty agreeing with the trial court Mrs. Bush appeared to be a conscientious woman who did all she could to take good care of her great grandchild. Her actions in keeping the child in the same room as she, in putting the matches out of his reach, in calling to him as soon as she discovered he held the lighted candle, in promptly following him into the next room (after setting down the dishes she was carrying) reveal no negligence on her part.
Appellants argue further Kenneth Rester should not be held responsible for the delicts of his child, because at the time of the incident the child was in the custody of another person, Mrs. Bush. This argument has no merit. Under La.Civ.Code art. 2318[6] the father is responsible for the damage occasioned by the minor child residing with him even though the child was under the care of another. There is no question but that Charles Rester resided with his parents. In Turner v. Bucher, 308 So.2d 270, 277 (La.1975), rehearing denied 1975, the court held "This legal fault is determined without regard to whether the parent could or could not have prevented the act of the child, i.e., without regard to the parent's negligence. It is legally imposed strict liability." The court went on to say the liability could be avoided only when the parent shows the harm was caused by the fault of the victim, by the fault of a third person, or by a fortuitous event.
Appellants contend alternatively that even if Mr. Rester is strictly liable he should be relieved of liability because the damage was caused by the fault of a third person, Mrs. Bush. We have already discussed Mrs. Bush's actions and have found her free of negligence. Therefore we cannot conclude the damage was caused by the fault of a third person.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are to be paid by appellants.
AFFIRMED.
NOTES
[1] Sentry also included an alternative demand against Frank Bodnar, alleging that in the event the court should rule Sentry was not entitled to subrogation, Sentry had a claim against Bodnar for breaching the policy in failing to execute the articles of subrogation.
[2] One could argue as in the case with medical benefits, the insurer here was bound to pay the benefits under the fire policy regardless of the liability of a third party.
[3] Art. 2134. "An obligation may be discharged by any person concerned in it, such as a coobligor or a surety.

The obligation may even be discharged by a third person no way concerned in it, provided that person act in the name and for the discharge of the debtor, or that, if he act in his own name, he be not subrogated to the rights of the creditor."
[4] Johnson noted that at one time courts were allowing insurers to proceed against tortfeasors on the basis of Civ.Code art. 2315. See London Guarantee & Acc. Ins. Co. v. Vicksburg S. & P.R. Co., 153 La. 287, 95 So. 771 (La.1923) and Aetna Casualty & Surety Company v. Allen, 132 So.2d 240 (La.App. 3d Cir.1961). This rationale was later rejected. See Forcum-James Co. v. Duke Transportation Co., 231 La. 953, 93 So.2d 228 (1957) and American Indemnity Co. v. New York F. & M. Under., Inc., 196 So.2d 592 (La.App. 1st Cir.1967).
[5] Mrs. Bush testified she walked with a cane.
[6] "The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons. The same responsibility attaches to the tutors of minors."