446 So.2d 442 (1984)
Peggy L. WHEELAHAN
v.
Mary Ann ELLER and Allstate Insurance Company.
No. CA-1115.
Court of Appeal of Louisiana, Fourth Circuit.
February 9, 1984.
Concurring Opinion February 16, 1984.
Writ Denied March 23, 1984.
*443 Harold M. Wheelahan, III, New Orleans, for plaintiff-appellee.
Thomas D. Benoit, Staff Atty., State Employees Group Benefits Program, Baton Rouge, for intervenor-appellant.
Before REDMANN, BARRY and WILLIAMS, JJ.
BARRY, Judge.
In this tort suit an insurer appeals the denial of its intervention for reimbursement of medical expenses paid to its insured. The sole issue is whether a medical benefits insurer, in the absence of conventional subrogation, is legally subrogated to its insured against a tortfeasor.
Plaintiff Peggy Wheelahan claims injuries from an automobile accident and sued the driver of the other vehicle and her insurer Allstate Insurance Company, and Government Employees Insurance Company (GEICO), plaintiff's uninsured motorist carrier. Plaintiff was an employee of the L.S.U. Medical Center and a member of the State Employees Group Benefits Program which provided accident benefits. The Program paid plaintiff $12,098.14 for medical expenses and filed an intervention for reimbursement from the driver and her insurer. The trial judge, without assigned reasons, denied the intervention and the Program now appeals.
A person may pay another's debt, but there is no subrogation under C.C. Art. 2134, which provides:
An obligation may be discharged by any person concerned in it, such as a co-obligor or a surety.
The obligation may even be discharged by a third person no way concerned in it, provided that person act in the name and for the discharge of the debtor, or that, if he act in his own name, he be not subrogated to the rights of the creditor.
An exception (not applicable here) is C.C. Art. 2160 which provides for express conventional subrogation.
Intervenor contends it is legally subrogated under C.C. Art. 2161(3): Subrogation takes place of right:
* * * * * *
3. For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it.
Thus, legal subrogation occurs if the party who paid the debt is "bound with others, or for others." Intervenor cites Pringle-Associated Mortgage Corp. v. Eanes, 254 La. 705, 226 So.2d 502 (1969) which interprets Art. 2161 to require that an obligation be in solido for subrogation to take place.
The intervenor concludes: "This principle [Pringle] certainly fits the present situation. Due to the injury to the plaintiff, the Program was obligated (by `contract') to pay certain medical expenses up to a designated amount. If a third person *444 (the defendant-driver) is at fault in causing the injury, then she is obligated to pay those same expenses (by `tort'). Thus the Program is `bound with' the defendant for these expenses and is entitled to legal subrogation from the plaintiff to collect them from the defendant."
Intervenor also cites Volume Shoe Corp. v. Armato, 341 So.2d 611 (La.App. 2d Cir. 1977) (hazard insurer), Hartford Accident & Indemnity Company v. Byles, 280 So.2d 624 (La.App. 3d Cir.1973) (uninsured motorist insurer) and Sentry Indemnity Co. v. Rester, 430 So.2d 1159 (La.App. 1st Cir. 1983) (casualty/fire insurer), all of which held that Art. 2161(3) grants subrogation against the negligent tortfeasor.
Plaintiff counters that the Program is a bargained-for exchange in which the plaintiff/employee received benefits in lieu of additional salary. Plaintiff points out the Program is financed by equal contributions from the State and its Employees and their contract provides:
In consideration of the payment of contributions by the contract holder in the amounts and at the times hereinafter provided, the Program hereby agrees with the contract holder, subject to the terms appearing on this and the following pages of this contract including, if any, the riders, endorsements, and amendments to this contract which are signed by the board to pay benefits in accordance with the terms of this contract. The obligations and the rights of all persons under this contract shall be determined in accordance with the terms of this contract without regard to the terms of any prior agreement or of any instrument amending or supplementing or replacing any such agreement.
and later, further provides:
This written contract and the individual application of the Covered Employee constitutes the entire contract between the parties.
Plaintiff notes her contract fails to grant conventional subrogation, and argues in the absence of a solidary obligation there is no legal subrogation under Art. 2161(3). Harris v. Huval Baking Co., 265 So.2d 783 (La.App. 3d Cir.1972) writ denied 263 La. 103, 267 So.2d 210 (1972); Courtney v. Harris, 355 So.2d 1039 (La.App. 4th Cir. 1978).[1] Both cases denied subrogation where the insurer paid medical expenses caused by a third party tortfeasor. In Courtney v. Harris we pointed out Hartford Accident & Indemnity Co. v. Byles, supra, (relied on by intervenor) was distinguishable. Byles involved uninsured motorist coverage (not medical payments) and held in favor of legal subrogation; however, the Court carefully distinguished Harris v. Huval Baking Company, supra, and American Indemnity Co. v. New York Fire & Marine Underwriters, Inc., 196 So.2d 592 (La.App. 1st Cir.1967) (no legal subrogation for medical insurer, nor right of direct action by medical insurer against tortfeasor) and said:
[T]he insurer was not legally subrogated to the rights of the insured insofar as the medical payments were concerned. In [American Indemnity] as in Harris v. Huval Baking Co., supra, the medical payments were owned by the insured regardless of liability on the part of anyone else, and the insurer thus was not bound with or for any other person for those payments. Article 2161 of the Civil Code did not apply, and the insurer thus was not entitled to a legal subrogation to the rights of its insured under that article.

Byles, supra, at 627.
The two other cases cited by intervenor, Volume Shoe and Sentry Indemnity, are also distinguishable. In Volume Shoe the defendant's automobile damaged Payless Shoe Store, a wholly owned subsidiary of Volume Shoe. The hazard insurer, Fireman's Fund, paid Volume Shoe and a subrogation agreement was executed. Without addressing the effect of the subrogation, the Court relied exclusively on Byles, *445 supra, and held Fireman's Fund was legally subrogated under Art.2161.
Sentry Indemnity, supra, involved a subrogation claim pursuant to a fire policy. Sentry's policy stated the insurer "may require from the insured an assignment of all rights of recovery against any party for the loss...." The insured informed the insurer "he did not wish to subrogate" and no subrogation agreement was effected. Without discussing this further, the Court, relying on Byles, Volume Shoe and Prof. Johnson's article (footnote 1 supra), granted subrogation under Art. 2161(3). Byles, Volume Shoe and Sentry are inapplicable.
The public policy considerations urged by intervenor are without merit. To deny subrogation will not result in the wrongdoer escaping responsibility as suggested by intervenor (and by Sentry, supra, at 1162 and Johnson, supra, at 679, 684). The "collateral source rule" prevents such a "windfall" to the defendant. On the other hand, plaintiff's insurance recovery is what she paid for; the proceeds are "net" after considering premium payments.[2]
Nor do we agree that permitting legal subrogation will necessarily result in lower premiums for insureds. That academic supposition presupposes numerous variable factors. During argument intervenor's counsel stated that the Program's coverage now includes subrogation, but that premiums were recently increased.
The basis of the debts are different (contract-tort) and the amounts may vary. The insurer's liability exists regardless of fault, so it is not "bound with" the tortfeasor.
The judgment of the district court is affirmed at intervenor's/appellant's costs.
AFFIRMED.
REDMANN, C.J., concurs with reasons to follow.
REDMANN, Chief Judge, concurring.
I subscribe to Judge Barry's opinion, but, because we differ with so respected a legal scholar as Professor Johnson (cited above at note 1), I offer an expansion of our view that a tort victim's personal medical insurer and the tortfeasor are not liable in solido.
Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982), may be deemed an obstacle to this view. In Hoefly an accident victim did not sue an uninsured motorist carrier until more than two years after the accident, by which time the two-year prescription would have accrued unless interrupted. Prescription was interrupted, Hoefly reasons (with three dissents), by the victim's suit against the uninsured motorist tortfeasor, because suit against one solidary co-obligor interrupts prescription as to all, and the UM carrier is liable in solido with the tortfeasor. UM carrier and tortfeasor are liable in solido, says Hoefly, because their respective obligations to the victim meet the definition of La.C.C. 2091 of an obligation in solido:
"There is an obligation in solido on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, and when[1] the payment which is made by *446 one of them, exonerates the others towards the creditor."
Payment by the UM carrier or tortfeasor does "exonerate" the other toward the victim, Hoefly declares.
Hoefly is cited by Johnson v. Fireman's Fund Ins. Co., 425 So.2d 224, 227 (La. 1982), in reasoning that the liability of workers' compensation insurer and uninsured motorist insurer is solidary. But Johnson holds that on public policy grounds the compensation insurer is not subrogated to UM insurance for which the employee has personally paid the premiums. Thus, where an employee has personally paid for UM insurance, notwithstanding any solidarity between workers' compensation and employer-paid UM insurers, payment by a worker's compensation insurer presumably does not exonerate the employee's own UM insurer towards the employee (as a consequence of which those two insurers cannot be liable in solido). Not controlling here, Johnson nevertheless suggests the possibility that an injured person's having personally paid insurance premiums may be a factor in deciding whether or not some other seeming co-obligor is liable in solido and therefore subrogated to the injured person's claim against the insurer.
In any case it does not follow, from a UM insurer's being held solidarily liable with an uninsured motorist (or with a workers' compensation insurer) that a medical insurer is solidarily liable with a tortfeasor. The UM carrier contracts to pay the uninsured part of the motorist's debt, arguably "the same thing" within art. 2091. If there is no uninsured (or underinsured) motorist, or if the uninsured motorist is not (initially) liable, the UM carrier is not liable.[2] No such relationship exists between medical insurer and alleged tortfeasor; the medical insurer contracts to be and is always liable, whether or not there is an alleged tortfeasor and whether or not the alleged tortfeasor is liable. Most important of all, there is a statute declaring the UM insurer "entitled to the proceeds," R.S. 22:1406D(4), of the victim's claim against the tortfeasor (and there is a similar statute for a workers' compensation insurer, R.S. 23:1101); there is no such statute in favor of a medical insurer.
Two persons may be debtors to the same creditor and for the same number of dollars without being bound in solido, even when their liability arises in part out of the same event. The death of one person may cause two different life insurers to owe, say, $500,000 each to the decedent's surviving spouse. Yet, evidently, what is owed by each is not "the same thing," art. 2091, despite their measure's being the same; perhaps more immediately evident, payment by one life insurer does not "exonerate" the other, does not discharge the other's liability towards the beneficiary.
The same death might also oblige the person whose fault caused the death to owe the surviving spouse damages, C.C. 2315. Let us assume a jury fixes those damages at $1,000,000. That is the same amount that the insurers owe, but it is not "the same thing," and payment by either tortfeasor or insurer does not exonerate the other.
To hold the contraryto hold that C.C. 2091 makes the victim's insurer and the tortfeasor co-obligors in solidowould mean that by subrogation under C.C. 2161(3) both tortfeasor and insurer would escape 50% (C.C. 2103), or else one of them escapes 100% (C.C. 2106), of their "solidary" liability (assuming both are solvent). As to the tortfeasor, it is simply inconceivable that C.C. 2091 thus requires the victim's own insurance to relieve the tortfeasor of liability. As to the victim's insurer, it is also inconceivable that C.C. 2091 halves or extinguishes its debt. The insurer collected premiums from the victim (and *447 other insureds) during the victim's life that were actuarially calculated, on a precise mathematical basis, to produce an amount sufficient to pay the victim's death benefit (and the death benefits of every other insured). It is not insurance company shareholders' contributions, but insureds' premiums, accumulated and invested by the insurer over the years, that pay contractual death benefits.
A medical insurer is not significantly different from a life insurer in this respect. Medical insurance benefits similarly constitute a return of the insureds' and other insureds' own premium money.
The essential difference between a large group of persons' paying money as premiums to an insurer and their paying the same amounts of money to a bank as "rainy-day" savings is that their agreement with the insurer makes the total of the payments made by all of them available to each of them for the specified risks, while their agreements with the bank give each access only to his or her own deposits and interest. When an insured risk materializes and the insurer pays the agreed indemnity, it is not unfair to treat the payment as if a return to the insured of the insured's own money (as if he or she had withdrawn the money from his or her "rainy-day" savings account).
Because the proceeds of insurance whose premiums were paid by the victim can fairly be treated as if a return to the victim (or his or her beneficiary) of the victim's own funds, the victim's insurer's obligation to make such a return of the victim's own funds can hardly be held to be "the same thing" as the tortfeasor's obligation to repair damages; and the victim's insurer's actual return of the victim's own funds cannot reasonably be held to entitle the victim's insurer, instead of the victim, to recover the victim's damages from the tortfeasorunless that was the agreement of the parties by express provision of their contract.
There is nothing to prevent such an express provision in a medical insurer's contracts, providing for reimbursement from any recovery by its insureds. Noting the statutory reimbursement provisions in uninsured motorist insurance, La.R.S. 22:1406D(4), and fire insurance, R.S. 22:691, this writer in Liberty Mutual Ins. Co. v. Weinberger, 329 So.2d 254, 256 (La. App. 4 Cir.1976), upheld a medical policy reimbursement provision, expressing the view that
"public policy prefers reimbursement provisions in order to have the reduction in premium. There is no public advantage to the entire public paying a higher insurance premium in order that injured persons can collect twice for the same medical expense."
In the absence of a reimbursement or similar provision in the insurance contract, however, C.C. 2161(3) does not give legal subrogation to a medical insurer paid by the victim, because the tortfeasor and such an insurer are not liable in solido.
"An obligation in solido is not presumed; it must be expressly stipulated.
"This rule ceases to prevail only in cases where an obligation in solido takes place of right by virtue of some provisions of the law." C.C. 2093.
The best-known example of solidarity by law may be the case of joint tortfeasors, C.C. 2324. But the broadest "provisions of the law" are those of C.C. 2091, whose least self-defining criterion of solidarity is that payment by one debtor in solido exonerates all.
To decide whether one debtor's payment exonerates the others involves several considerations. Surely the socially desirable aims of Professor Johnson are considerations; as Weinberger noted, double recovery (even if not of "the same thing") and higher premiums are not deemed socially desirable. Perhaps a more significant consideration (though not paramount in the face of a statute or contract, as Hoefly and Weinberger prove) is whether one debtor's payment is akin to a mere restoration to the creditor of his or her own money, as in the case of a payment of insurance proceeds to an insured (or to the beneficiary of an insured) whose own money has paid the *448 premiums, as in Johnson v. Fireman's Fund. The paramount consideration is the wording of any applicable statute or, in the case of a contractual debtor, the wording of the contract itself.
The wording of the contract in Weinberger did not provide solidarity, but it did provide conventional subrogation or reimbursement; the wording of the present contract provides neither. Wording an insurance contract to provide reimbursement can allow lower premiums, and that possibility and the absence of a societal need for double recovery do justify putting a reimbursement clause into future insurance contracts, but do not justify reading a reimbursement clause into this contract.
The contract in this case has no such clause, and the facts of this litigation in no way support a conclusion that the medical insurer is liable in solido with the tortfeasor. The insurer is not "bound with ... or for" the tortfeasor, C.C. 2161(3), by whom the insured was injured. The insurer is therefore not subrogated, by contract or by law, to its insured's claim against the tortfeasor.
NOTES
[1] See Legal Subrogation of Insurer to Insured's Rights Upon Payment of Claim, Johnson, Prof. H. Alston, 39 La.L.Rev. 675 (1979) which criticizes Courtney v. Harris.
[2] In a case involving comparative negligence, subrogation could provide for less than the insurance recovery, or the tortfeasor might be forced to pay the total loss even though the comparative fault was disproportionate. Query: adopting intervenor's position, is a life insurer legally subrogated for death benefits against a tortfeasor?
[1] This second "when" might be translated "that," for the two "whens" are not two distinct components of solidarity. The 1825 French text (which prevails over a mistranslation, Bradford v. City of Shreveport, 305 So.2d 487 (La.1974)), declares solidarity of debtors "lorsqu'ils sont obligés à une meme chose, de manière que chacun puisse etre contraint pour la totalité, et que payement fait, par un seul, libère les autres envers le créancier." The debtors' being obliged to "the same thing" is the essence of solidarity; being obliged to the same thing has, inescapably, the two effects that (1) each debtor can be compelled to pay the whole debt and (2) payment by one discharges all the others towards the creditor (but not necessarily towards the paying debtor, who is subrogated, C.C. 3053, to the creditor's right against the others, C.C. 2161(3), unless they are but his sureties, C.C. 2106).
[2] It is somewhat inconsistent with solidarity theory, although otherwise justifiable, that the UM carrier may remain liable after the tortfeasor is released by the victim, Niemann v. Travelers Ins. Co., 368 So.2d 1003 (La.1979), and that the tortfeasor's (but not the UM carrier's) liability is lessened by the tortfeasor's inability to pay, Bond v. Commercial Union Assur. Co., 407 So.2d 401 (La.1981).