YELVERTON, Judge.
This appeal is from a judgment rejecting a demand to recover fire damage to a dwelling from the person whose negligence allegedly caused the fire. Billy Hollis, the owner of the dwelling, and his insurer, Independent Fire Insurance Company (Independent), sued to recover $68,358.49. They sued Johnny Romero and Romero’s homeowner’s liability insurer, United States Fidelity & Guaranty Company (USF & G), alleging that it was Romero’s negligence that caused the fire. A jury returned a verdict finding that the conduct of Romero was not negligent, nor was his conduct a cause of the fire. The plaintiffs’ suit was accordingly dismissed. From this judgment plaintiffs have appealed.
We find that the jury was clearly wrong in its determination that the fire was not caused by the negligence of Romero. We find fault on the part of Romero. Hollis, the homeowner, and Independent under subrogation, are entitled to recover from Romero and USF & G. Sentry Indem. Co. v. Rester, 430 So.2d 1159 (La.App. 1st Cir.1983). We find, however, that Hollis was also at fault, much more so than Romero. Accordingly, his and Independent’s recovery will be reduced in proportion to his degree of fault under the comparative fault principles of La.C.C. art. 2323. We find the degree of fault of Romero to be 5%, and that of Hollis, 95%. We reverse and render.
The fire was caused by the do-it-yourself efforts of two friends to repair a water leak in a wall. On the evening of August 11, 1986, Hollis, while attempting to remove a faucet, broke a pipe and started a leak in the wall in the laundry room of his home.
Hollis called his sister’s house for Romero, who was visiting there. Romero had been his friend for 20 years, and Hollis asked him to come over and help him. Hollis called Romero because he knew it would take two people to go into the wall and fix the leak; one could not do it alone. Also, Hollis did not have the right tools, and he knew that Romero, who was a retired building contractor, either possessed or could borrow the necessary tools. He knew Romero was not a plumber, but thought their combined knowledge could get the job done. Romero obliged, arriving with his own tool box and a borrowed torch.
The leak was in the outer wall of the utility room. The wall covering on the inside of the utility room was sheet rock; on the outside it was brick. The supports inside were two inch by four inch wooden studs. There was insulation in the wall with the vapor barrier facing outside.
The two friends cut a five inch by six inch hole in the sheetrock wall. Through this hole they could see where the pipe had been twisted and knew that it had to be replaced. They concluded that the job required soldering because the pipe was copper, had no threading, and had previously been soldered. The job was prepared for soldering. They sprayed water into the hole, pushed the insulation up, and put aluminum foil around the hole on the sheet rock.
Both were aware that neither knew much about using a torch. Romero had never used this type torch before. Hollis had experience with a torch but never inside a wall. Neither had experience as a plumber and both knew that also. They knew enough to know that there was a risk of fire. Romero lit the torch and directed the three to four inch flame into the hole. The area inside the wall between the sheet rock and brick was about three and one-half inches. He applied the flame to the pipe in order to melt the soldered connection on the damaged pipe. Meanwhile, Hollis was outside pulling on the pipe to free it. Once the damaged pipe was removed, Hollis inserted a new section of copper pipe and held it in place while Romero soldered the connection. After the soldering was completed, they again sprayed the hole with water, removed the foil, sprayed more water into the hole, and felt inside the hole for heat. None was detected. The job done, Romero left the premises.
Although Romero left after the job was finished, it is clear from the record that the two friends were aware that the risk of fire *989 was not over, and that further monitoring of the situation was needed during the night. This is demonstrated by the fact that before retiring for the evening, Hollis went back into the utility room and checked the area. The record does not explain precisely how he checked the area. The following is the testimony of Hollis on that subject:
Q. Now, after Mr. Romero left that night you stayed up for a while, didn’t you?
A. Yes, sir.
Q. Now, before you went to bed didn’t you go back one more time to that hole and check that hole one more time yourself to be confident that there was no problem with that hole?
A. Yes, sir.
Q. And you were confident that there wasn’t?
A. Yes, sir.
Q. You put your hand — did you feel any heat?
A. No, sir.
Q. You and your wife live there at the house?
A. Yes, sir.
Q. You have children at the time?
A. Yes, sir.
Q. You make sure they were safe before you went to bed in your own mind, isn’t that correct?
A. Yes.
Although the incipient fire was surely discoverable by the time Hollis went to bed, it is evident that he failed to perform a thorough inspection because the fire was not discovered. Later in the night the house burned.
Independent paid $68,108.49 to repair the damages. The $250 deductible was paid by Hollis. They sued to recover this total.
The case was presented to the jury on two interrogatories. The first interrogatory inquired as to whether the actions of Romero were negligent, and whether such negligence was a proximate cause of the fire. “Yes” or “no” spaces were provided for the jury to check its response and, in case the answer was “yes”, a blank space was provided for the insertion of the percentage of Romero’s fault. The second interrogatory was an identical inquiry with respect to Hollis, his negligence, causation, and percentage of fault. The verdict form emphasized that when the two percentages were added together, the numbers in the answer to the two questions had to equal 100%. By answering “no” to both questions regarding the negligence of these two individuals, the jury indicated a finding that no one was at fault. The jury evidently could not bring itself to find fault with Romero’s neighborly response to his friend’s solicitation for help.
This factual resolution of the case by the jury was clearly wrong. The house burned because two people who did not know what they were doing undertook to solder a copper pipe inside a wall, then failed to properly monitor the situation until the danger of fire had disappeared. The evidence established that the fire started where the soldering had been done.
Under the facts and circumstances of this case Romero owed a duty to refrain from any risk-creating activity beyond his knowledge and experience that would result in damaging Hollis’ home. Once the risk was created, he had a duty to reasonably monitor the risk until it disappeared.
Hollis, as the homeowner, had a similar duty to refrain from any risk-creating activity beyond his knowledge and experience that would result in damaging his home. He likewise had a duty to monitor the risk once it was created until it disappeared.
Both parties breached these duties. Both knew that a torch was needed to unsolder and solder pipe connections inside the wall, and that they lacked soldering expertise. Having some experience, Hollis knew more about using a torch than Romero. Once they cut a hole in the wall, they could see that the wall contained a vapor barrier material and wooden studs, both flammable materials. They realized that there was only about three-and-one-half inches between the inner and outer walls, and that the flame from the torch to be *990 used was three to four inches long. They were both aware of the high risk of fire as evidenced by the wetting precautions they took to prevent a fire. They were both negligent in undertaking this task.
The record does not contain a chronology of events by the clock, but Romero left shortly after the soldering was completed. We do not regard Romero’s departure as unreasonable, because it was getting late and Hollis would still be there on guard. Hollis should have needed no help as a watchman. Hollis assumed total responsibility for monitoring the risk after Romero left. Fully aware of the risk, he checked the wall one last time before going to bed. We think that had Hollis properly checked the wall, he would have discovered the fire. He could have used a flashlight to aid him in finding smoke up inside the wall. He could have thoroughly felt inside the wall for heat. He could have turned out the lights in the utility room and looked for a glow in the darkness. He could have tried to detect the odor of burning. There was no evidence that he did any of these things. Since all of the evidence points to the use of the torch as the cause of the fire, it stands to reason that by the time Hollis went to bed, whenever it was, the incipient fire would have been somehow detectable, had a careful inspection been performed. The fact that it was not detected means that Hollis did not perform a careful inspection. Had the fire been detected by Hollis before he went to bed, the damage could have been prevented.
In apportioning fault under La. C.C. art. 2323, there must be considered both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985). Various factors may influence the degree of fault assigned including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Id.
Considering these factors, we have found that the majority of fault must rest with Hollis. His negligent conduct in failing to properly monitor the wall for signs of fire was an additional direct cause-in-fact of the damage. As a homeowner, Hollis was decidedly in a superior capacity. He was solely responsible during the critical time between the completion of the job and when he went to bed. During this time he could have prevented the fire that practically destroyed his house. He had the last clear chance to prevent the harm.
We find Romero 5% at fault and Hollis 95% at fault.
For the above and foregoing reasons we reverse the judgment of the trial court and render judgment in favor of Independent and against Romero and USF & G for $3,417.92 and in favor of Hollis and against Romero and USF & G for $12.50. All costs, including this appeal, are assessed in the same proportions.
REVERSED AND RENDERED.