980 So.2d 654 (2008)
Eugene BELLARD
v.
AMERICAN CENTRAL INS. CO., et al.
Nos. 2007-C-1335, 2007-C-1399.
Supreme Court of Louisiana.
April 18, 2008.
*658 Marceaux Law Firm, Gregory Paul Allen Marceaux, Lake Charles, for applicant in 2007-C-1399 and respondent in 2007-C-1335.
Raggio, Cappel, Chozen & Berniard, Frederick L. Cappel, Richard B. Cappel, Lake Charles; Degan, Blanchard & Nash, Sidney Wallis Degan, III, Travis Louis Bourgeois, for respondent in 2007-C-1399 and applicant in 2007-C-1335.
Michael Paul Bienvenu, Baton Rouge, for amicus curiae, Fireman's Fund Insurance Company.
Gary Joseph Arsenault, Alexandria, for amicus curiae, Louisiana Association for Justice.
WEIMER, Justice.
We granted certiorari in this case primarily to resolve a conflict in the courts of appeal with respect to whether an uninsured motorist carrier is entitled to a credit for medical and disability wage benefits paid on behalf of or to an injured worker by a workers' compensation carrier. The court of appeal reversed the district court's grant of summary judgment which provided the uninsured motorist carrier with a credit for the workers' compensation medical benefits that had been paid *659 by the plaintiff's employer on his behalf. The court of appeal held that the uninsured motorist carrier is not entitled to a credit for medical or disability wage benefits paid by the workers' compensation insurer because these insurers are not solidary obligors and because the collateral source doctrine applies to prohibit the uninsured motorist carrier from receiving a credit for these payments. We disagree.
Another reason we granted certiorari in this case was to address plaintiff's contention that the district court erred in its assessment of causation and in its award of damages. After reviewing the record and the arguments of the parties, we find, as did the court of appeal, that the district court's conclusions as to causation are not manifestly erroneous. However, accepting the district court's factual conclusions as to causation and the extent of plaintiff's injuries, we find that the court abused its vast discretion in assessing the amount of general damages and we increase the award of general damages to $200,000.00. Accordingly, the judgment of the court of appeal is affirmed in part and reversed in part.

FACTS AND PROCEDURAL HISTORY
On August 26, 2002, Eugene Bellard, a delivery driver for Builders Sav-Mor, Inc. ("Sav-Mor"), a building materials retailer, was driving a company pickup truck when he was rear-ended by an automobile driven by Katie Gayle. Bellard had just completed a delivery and was returning to his place of employment. He was traveling southbound on La. Hwy. 27 in Sulphur, Louisiana, with the intention of making a left turn onto the entrance ramp of Interstate 10 East. The weather was wet and rainy. When he entered the designated left turn lane, oncoming traffic forced Bellard to bring his truck to a stop. As traffic cleared and Bellard released the clutch in anticipation of moving forward, Gayle's vehicle hydroplaned into the rear of the truck. Gayle estimated she was traveling between twenty and twenty-five miles per hour at the time of impact.
Gayle's vehicle struck the tailgate of the truck, which was equipped with a "Tommy Gate," a heavy duty steel hydraulic lift gate used for loading and unloading cargo. The lift gate came to rest on the hood of Gayle's car, causing the front and passenger side windows to shatter and the air bag to deploy. Gayle's car was towed from the scene and was ultimately declared a total loss. Sav-Mor's truck, on the other hand, sustained almost imperceptible damage; the truck and its lift gate remained in use by Sav-Mor without the necessity of any repairs.
Gayle suffered minor injuries in the accident, consisting mostly of bruising and burns from the deployed air bag and her seat belt. Bellard refused medical treatment at the scene, and again later, when he returned to work and reported the accident to his employer. He continued to work that day and for approximately eight days thereafter. On September 3, 2002, Bellard presented at the W.O. Moss Regional Medical Center Emergency Room with complaints of generalized pain. He was examined, medication was prescribed, and he was released.
On September 25, 2002, Bellard consulted Dr. Robert Dale Bernauer, an orthopedic surgeon, complaining of neck pain and pain in the left shoulder that extended down the arm and into the elbow. He reported tingling in both hands and lower back pain radiating down his thigh. Dr. Bernauer recommended a course of physical therapy and prescribed muscle relaxers and pain medication. Suspecting a herniated lumbar disc, bilateral carpal tunnel syndrome, and a cervical injury, Dr. Bernauer *660 ordered an MRI of the cervical and lumbar spine and an EMG of both hands. Before those diagnostic tests could be completed, however, Bellard was involved in another automobile accident.
On November 24, 2002, Bellard drove his car into a telephone pole in a self-described suicide attempt. Although Bellard described the impact as "very hard" and stated his vehicle was a total loss, he denied suffering any physical injuries in the incident. He did, however, seek treatment for depression and was subsequently admitted to Lake Charles Memorial Hospital for psychiatric treatment for a period of one week. Bellard explained that he was feeling overwhelmed by debt, unemployment and chronic pain, which he attributed to the accident with Gayle. Dr. Bernauer's notes reflect that after this second accident, Bellard reported experiencing an increase in pain, but no new injuries. He continued with a course of conservative treatment.
In late November or early December 2003, Bellard was involved in a third accident. This automobile accident occurred when Bellard, traveling at a speed of approximately thirty-five miles per hour, ran a stop sign and broad-sided another vehicle. The Ford Ranger he was driving sustained extensive front end damage, rendering it a total loss. Nevertheless, Bellard maintained that he was not injured in the accident, and he continued with the course of treatment prescribed by Dr. Bernauer.
Experiencing no appreciable improvement in his condition, Bellard underwent the first in a series of four surgeries in March 2004; he had lumbar spine surgery, which consisted of a facetectomy, diskectomy and fusion at L5-S1. In February and April of 2005, two more surgeries were performed to correct bilateral carpal tunnel syndrome. The lumbar surgery and the carpal tunnel release surgeries proved to be successful. Finally, in September 2005, Bellard underwent cervical spine surgery, which consisted of a three-level diskectomy and fusion at C3-C4, C4-C5, and C5-C6. At the time of trial, Bellard was still recovering from the cervical spine surgery. He had not worked since September 2002, shortly following the first accident.
On December 10, 2002, Bellard filed suit against Gayle and her liability insurer, American Central Insurance Company, seeking damages for the injuries he sustained in the August 2002 rear end collision. By supplemental and amending petition, Trinity Universal Insurance Company of Kansas, Inc. ("Trinity") was added as a defendant based on a policy of uninsured motorist insurance issued to Bellard's employer, Sav-Mor. Sav-Mor, in turn, intervened in the lawsuit seeking recovery of workers' compensation disability benefits paid to and medical benefits paid on behalf of Bellard.
Bellard ultimately settled with the tortfeasor, Gayle, and her liability insurer, American Central Insurance Company, for the policy limits of $50,000, and voluntarily dismissed those defendants from his lawsuit. Thus, Trinity, Sav-Mor's uninsured motorist carrier, was left as the lone defendant. Bellard then filed a motion for summary judgment seeking to dismiss Sav-Mor's intervention against Trinity on grounds that the policy of uninsured motorist insurance issued by Trinity excludes coverage for the "direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law." Based on this court's decision in Travelers Insurance Company v. Joseph, 95-0200 (La.6/30/95), 656 So.2d 1000, which upheld an identical exclusion in a policy of uninsured motorist insurance, the summary judgment was granted and *661 the intervention of Sav-Mor dismissed with prejudice.
Following the dismissal of Sav-Mor's intervention, Trinity filed a motion for summary judgment seeking a declaration that it is entitled to a credit for all payments made to Bellard as workers' compensation benefits. After taking the motion under advisement, the district court granted Trinity's motion and issued detailed written reasons in support of its ruling. Adopting the rationale of the Court of Appeal, Fourth Circuit in Molony v. United Services Automobile Association, 96-1747 (La.App. 4 Cir. 11/6/96), 683 So.2d 891, writ denied, 96-2915 (La.2/21/97), 688 So.2d 516, the district court concluded that Trinity is entitled to a credit for medical expenses paid as workers' compensation benefits because the workers' compensation carrier and the uninsured motorist carrier are solidarily liable for medical expenses, and payment by one solidary obligor relieves the other of liability toward the obligee to the extent of the payment. In reaching its conclusion, the district court expressly rejected Bellard's contention that the collateral source doctrine applies in this situation to prohibit the credit. In so doing, the court noted that a major policy consideration prompting the collateral source doctrine is the concern that a tortfeasor not benefit from the fact that the injured victim has had the foresight to obtain insurance and other benefits. The court pointed out that such a concern is not a factor in this case, as the tortfeasor has been released and will not in any manner "benefit" from the credit to the employer's uninsured motorist carrier. The district court further reasoned that application of the doctrine under these facts would result in a windfall or double recovery for the plaintiff who has suffered no reduction of his patrimony from the procurement of worker's compensation insurance. As a result, the district court concluded that the collateral source doctrine should not be applied in this instance to allow Bellard to be compensated twice for medical expenses, and that Trinity is entitled to a credit for medical expenses paid by the workers' compensation insurer. The judgment, however, was silent as to whether a credit would also be granted for workers' compensation disability wage benefits that had previously been paid to Bellard.
The actual trial of this matter commenced on February 22, 2006, before the district court. Following the conclusion of testimony, the matter was taken under advisement. On April 19, 2006, the district court issued an oral ruling with respect to liability and damages. Acknowledging that the causation issue was a difficult one in light of Bellard's subsequent accidents, the district court nevertheless determined that Bellard sustained injuries as a result of the negligence of Gayle, but that those injuries were not totally and permanently disabling. The district court awarded Bellard $62,422.00 for his pre-trial loss of earning capacity and $29,822.00 for his loss of future earning capacity. The loss of future earning capacity award is based on the district court's determination that Bellard could be retrained and return to the work force twenty months post-trial. The district court additionally awarded Bellard $50,000.00 in general damages, explaining that this figure took into consideration Bellard's $50,000.00 out-of-court settlement with Gayle and her insurer. Finally, the court awarded Bellard $334,040.60 in medical expenses, but then awarded a corresponding credit for those medical expenses to Trinity. No corresponding credit was awarded to Trinity for disability wage benefits paid by the workers' compensation insurer. A formal judgment awarding Bellard damages totaling $142,244.00 was signed by the district court on April 24, 2006. *662 Both Trinity and Bellard appealed that judgment.
On May 30, 2007, a five judge panel of the court of appeal reversed the judgment of the district court in part, affirmed in part, and rendered. Bellard v. American Central Ins. Co., 06-958 (La.App. 3 Cir. 5/30/07), 958 So.2d 107. The court of appeal examined the issue of Trinity's entitlement to a credit for workers' compensation benefits paid to or on behalf of Bellard; determined Trinity was not entitled to a credit for the medical expenses paid by the workers' compensation carrier; and reversed the summary judgment granted by the district court. In so doing, the court relied on its earlier decision in Leger v. Sonnier Exterminating Company, 05-1291 (La.App. 3 Cir. 4/5/06), 926 So.2d 158, writ denied, 06-1033 (La.6/23/06), 930 So.2d 982. The court held that an employer's workers' compensation insurer and uninsured motorist carrier are not solidarily liable for medical expenses or lost wages. Thus, payment by one does not exonerate the other for the same amount as paid to the creditor. However, because the employer's uninsured motorist carrier is a solidary obligor with the dismissed tortfeasor, the court of appeal held that the collateral source doctrine applies. Therefore, the plaintiff's tort recovery may not be reduced by the amount of monies received by the plaintiff from sources independent of the tortfeasor's procuration.
The court of appeal reversed the district court's finding that application of the collateral source doctrine in this instance would result in an illegal double recovery for Bellard. The court of appeal reasoned that Bellard has, in fact, given consideration for the workers' compensation benefits received by waiving the right to sue his employer for damages when injured on the job; thus, his patrimony has been diminished to this extent, which diminution constitutes additional damage suffered by him. Accordingly, the court of appeal held that Trinity must pay medical expenses in the amount of $334,040.60, without the benefit of a credit for workers' compensation benefits already paid on Bellard's behalf. Applying the same reasoning, the court also held that Trinity is not entitled to a credit for the wage indemnity benefits paid to date to Bellard.
Finally, the court of appeal turned to the issues of causation and damages. Finding that the district court did not commit manifest error in its conclusions on the issues of causation and damages, the court affirmed the district court's awards for general damages and loss of future earning capacity.
Both Bellard and Trinity applied to this court for writs of certiorari. Bellard argued that the awards for general damages and loss of future earning capacity should be increased. Citing Molony v. United Services Automobile Association, supra, and Boyd v. Moran, 03-0361 (La.App. 4 Cir. 9/17/03), 857 So.2d 1060, writ denied, 03-2856 (La.1/16/04), 864 So.2d 631, Trinity argued that there is now a direct conflict in the courts of appeal with respect to whether an uninsured motorist carrier is entitled to a credit for medical and disability wage benefits paid on behalf of or to an injured worker by a workers' compensation carrier. We granted certiorari primarily to resolve the apparent conflict in the courts of appeal, but also to address Bellard's concerns with respect to the amount of the damage award. Bellard v. American Central Ins. Co., 07-1335, 07-1399 (La.10/12/07), 966 So.2d 536.

LAW AND DISCUSSION
Uninsured Motorist Carrier's Entitlement to Credit for Workers' Compensation Benefits Paid
The first issuewhether an uninsured motorist carrier is entitled to a credit for *663 medical and disability wage benefits paid on behalf of or to an injured worker by the workers' compensation insurerhas received conflicting treatment in the courts of appeal. In the instant case, the court of appeal's holding that the uninsured motorist carrier is not entitled to a credit for either medical expenses or disability wage benefits paid by the workers' compensation insurer is in direct conflict with an earlier decision by the Court of Appeal, Fourth Circuit. In Boyd v. Moran, supra, which drew upon the rationale of Molony v. United Services Automobile Association, supra, the fourth circuit granted an uninsured motorist carrier a credit for medical and indemnity benefits paid by the plaintiff's employer and/or its workers' compensation insurer. In Molony, the court reasoned that the uninsured motorist carrier and the workers' compensation carrier are solidarily liable for the plaintiff's medical expenses such that payment by one exonerates the other, and that the collateral source doctrine does not apply in such a situation to override the principles of solidarity expressly set forth in the civil code.
We granted certiorari to resolve the apparent conflict and to clarify the law in this area.
Because the ruling in the instant case arose in the context of a motion for summary judgment, our review is de novo, applying the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). In addition, de novo review is warranted because the issue presented is a question of law. Cleco Evangeline, LLC v. Louisiana Tax Commission, 01-2162, p. 3 (La.4/3/02), 813 So.2d 351, 353.
As evidenced by the conflicting decisions referenced above, the analytical framework for resolving the issue of whether an uninsured motorist carrier is entitled to a credit for workers' compensation benefits paid to an injured worker hinges on two inquiries: (1) whether the insurers are solidary obligors; and (2) whether the collateral source doctrine applies. If the uninsured motorist carrier and the workers' compensation insurer are solidary obligors, then, pursuant to the provisions of LSA-C.C. art. 1794, "performance rendered by one of the solidary obligors relieves the others of liability toward the obligee," and the uninsured motorist carrier is entitled to a credit for amounts paid by the workers' compensation carrier. If the collateral source doctrine applies, payments received from a source independent of the tortfeasor's procuration or contribution are not deducted from the award the injured plaintiff receives from the tortfeasor and the plaintiff is entitled to recover the same damages from both the employer's uninsured motorist carrier and the workers' compensation insurer. Bozeman v. State, 03-1016, p. 9 (La.7/2/04), 879 So.2d 692, 698.
Solidarity of Uninsured Motorist Carrier and Employer and/or Workers' Compensation Insurer
Louisiana Civil Code article 1794 defines a solidary obligation as follows:
An obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee.
Drawing upon this definition, this court has held that a solidary obligation exists when the obligors (1) are obliged to the same thing, (2) so that each may be compelled for the whole, and (3) when payment by one exonerates the other from liability *664 toward the creditor. Hoefly v. Government Employees Insurance Company, 418 So.2d 575, 576 (La.1982).[1] In Hoefly, we examined each of these prerequisites to find solidary liability between an uninsured motorist carrier and a tortfeasor. In Narcise v. Illinois Central Gulf Railroad Co., 427 So.2d 1192 (La.1983), we conducted a similar analysis to find solidary liability between a railroad company liable to its employee under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, et seq., and a tortfeasor; and, in Williams v. Sewerage & Water Board of New Orleans, 611 So.2d 1383 (La.1993), we repeated the analysis to find solidary liability between an employer and a third party tortfeasor. In each instance, we recognized and emphasized that it is the coextensiveness of the obligations for the same debt which creates the solidarity of the obligation. Hoefly, 418 So.2d at 576; Williams, 611 So.2d at 1386; Narcise, 427 So.2d at 1195.
In the present case, an analysis of the respective obligations of the uninsured motorist carrier and the employer and/or its workers' compensation insurer leads to the conclusion that the requirements for a solidary obligation between these entities are satisfied.
The first component of solidarity described in Hoefly, Narcise, and Williams is met here, as both the uninsured motorist carrier and the workers' compensation insurer are "obliged to the same thing." Hoefly, 418 So.2d at 576; Williams, 611 So.2d at 1387. Specifically, both are obliged to repair certain elements of tort damage. As we explained in Johnson v. Fireman's Fund Insurance Company, 425 So.2d 224, 226 (La.1983):
The central purpose of both the worker compensation act and the uninsured motorist statute is the protection of the injured person. The compensation act protects him by providing compensation and by reserving to him any tort recovery from a third person that exceeds his compensation benefits. The uninsured motorist act protects him by making available in all situations, not just those that are work-connected, an opportunity for some recovery in place of what he would have gotten if the tortfeasor had been insured.
Under LSA-C.C. art. 2315, a tortfeasor is obliged to repair the damage that he has wrongfully caused to an innocent accident victim. The uninsured motorist carrier is obliged to repair the same damage. Hoefly, 418 So.2d at 578. By virtue of LSA-R.S. 22:1406(D)(1)(a) and the insurance contract, the uninsured motorist carrier is required to pay, subject to statutory and insurance policy considerations, amounts which the victim is entitled, under other provisions of law, to recover as damages from owners or operators of uninsured or underinsured motor vehicles. Id.[2] Similarly, by virtue of the workers' compensation act, the employer and/or its workers' compensation insurer is required to pay, subject to statutory considerations, certain amounts which the injured employee is entitled, under other provisions of law, to recover as damages from tortfeasors. For example, disability wage and medical benefits payable under the workers' compensation *665 act compensate the injured employee for the same damage that a tortfeasor would be compelled to pay under LSA-C.C. art. 2315. "In a worker's compensation claim where the employee does not suffer a fatal injury, some elements of compensation damages are the same as those which may be recovered as tort damages, i.e., lost wages and medical expenses. See LSA-R.S. 23:1202 and 1203." Williams, 611 So.2d at 1387. By the effect of law and the terms of their independent insuring agreements, the uninsured motorist carrier and the workers' compensation insurer are obliged to the same thing: they share coextensive obligations to reimburse the tort victim for lost wages and medical expenses incurred as a result of his or her injury at the hands of a tortfeasor.
In its decision below, the court of appeal erroneously focused on the sources of their respective obligations to conclude that the uninsured motorist carrier and the workers' compensation insurer are not "obliged to the same thing." The court of appeal cited Leger v. Sonnier Exterminating Company, supra, and Viada v. A & A Machine Works, Inc., 05-0210 (La.App. 4 Cir. 6/15/05), 914 So.2d 1113, writs denied, 05-1838, 05-1902 (La.3/10/06), 925 So.2d 506, for the proposition that because the uninsured motorist carrier and the workers' compensation insurer "have different obligations" to the injured party, they are not solidary obligors. Bellard, 06-958 at 12, 958 So.2d at 114-115. This reasoning directly contradicts our holdings in Hoefly, Narcise, and Williams as well as a provision of the Civil Code. See, LSA-C.C. art. 1797, which provides: "An obligation may be solidary though it derives from a different source for each obligor." In Hoefly, we stated that the sources of the obligors' debts are irrelevant as long as they are both obligated to the same thing. "The obligation may be in solido even though the obligations of the obligors arise from separate acts or by different reasons." Hoefly, 418 So.2d at 579. In Narcise, we pointed out that the existence of differing sources of liability "does not preclude an in solido obligation to the extent that each is liable for certain damages sustained by plaintiff." Narcise, 427 So.2d at 1195. We emphasized that "[i]t is the coextensiveness of the obligations for the same debt, and not the source of liability, that determines the solidarity of the obligation." Id. We echoed this holding in Williams, concluding that to the extent workers' compensation death benefits and the wrongful death and survival provisions overlap, an employer and a third party tortfeasor are obligated to the same thing even though the obligations arise from different sources. Williams, 611 So.2d at 1388. Likewise, in the present case, to the extent that workers' compensation disability wage and medical benefits overlap with the damages that are recoverable from the uninsured motorist carrier under the uninsured motorist law and the independent insuring agreement, the workers' compensation insurer and the uninsured motorist carrier are obligated to the same thing, although their obligations arise from separate parts of Louisiana law, or, as stated in LSA-C.C. art. 1797, "derive[ ] from a different source for each obligor."
The second component of solidarity is also present in this case: the uninsured motorist carrier and the workers' compensation insurer each may be compelled for the whole of their common liability. As we explained in Hoefly, an obligor's liability for the whole "means simply that the debtor who has been sued cannot plead the benefit of division, which was invented for the benefit of sureties whereby the creditor is required to divide his action between them." Hoefly, 418 So.2d at 578. Here, the uninsured motorist carrier and the employer *666 and/or its workers' compensation insurer share a common liability which is not subject to a plea of division.
Admittedly, the uninsured motorist carrier is liable to the accident victim only to the extent of its policy limits and only under the conditions and terms of its policy. Similarly, the liability of the employer and/or its workers' compensation carrier is subject to the limitations of the workers' compensation law. Nevertheless, obligations may be solidary even though the debtors are bound differently from each other, and even if their obligations are subject to different terms and conditions. LSA-C.C. arts. 1797, 1798.
The error of the court of appeal in the decision below is its reliance on the Leger and Viada decisions for the proposition that the requirement that each of the obligors may be compelled for the "whole" means that each obligor is liable for the entirety of the debt. Both before and since Hoefly, we have indicated that parties may be solidarily liable although their liability is in different amounts. American Bank and Trust Company v. Blue Bird Restaurant & Lounge, Inc., 290 So.2d 302, 306 (La.1974); Narcise, 427 So.2d at 1195. As we explained in Narcise:
The fact of different defenses, different prescriptive periods, different beneficiaries in some cases, and different elements of damages does not detract from the in solido nature of the obligation of the two debtors. These factors may be significant in determining the existence and extent of the liability of each debtor toward the plaintiff. However, once the extent of each debtor's liability has been determined, there is an in solido obligation as to their common liability to the injured party. While one item of damages may be recoverable against one debtor and not the other, the parties are liable in solido as to every item for which plaintiff can compel payment from either. [Emphasis added.]
Narcise, 427 So.2d at 1195. The court of appeal clearly erred in its reliance on Leger and Viada to suggest that the workers' compensation carrier and the uninsured motorist carrier are not bound for the "whole" and, thus, are not solidary obligors because the elements of damage to be compensated by the two insurers are not identical. To the extent the elements of damage recoverable from the uninsured motorist carrier and the workers' compensation insurer are co-extensive, the uninsured motorist carrier and the workers' compensation insurer are solidarily liable.
Finally, the third component of solidarity is satisfied in this case. Payment by one solidary obligor exonerates the other obligor as to the creditor. LSA-C.C. art. 1794. "This is a direct consequence of each debtor being obliged to the same thing so that each may be compelled for the whole, as if he were the sole debtor." Hoefly, 418 So.2d at 579. The injured employee is not allowed to obtain double recovery on those elements of damage which are coextensive.[3]Williams, 611 So.2d at 1388. Accordingly, as to the debt to which the employer's uninsured motorist carrier and the employer and/or its workers' compensation insurer are solidarily obliged, i.e., the payment of lost wages and medical expenses, payment of the debt by one exonerates the other from liability to the creditor.
*667 Having found all of the requirements for a solidary obligation, we hold that the employer's uninsured motorist carrier and the employer and/or its worker's compensation insurer are solidary obligors, having coextensive obligations to reimburse the plaintiff for lost wages and medical expenses incurred as a result of his injury. The court of appeal erred in rejecting solidary liability because the insurers' obligations arise from separate parts of the law and because the elements of damage to be compensated by each are not identical; the sources of the debtors' obligations are irrelevant. There is an in solido obligation as to every item for which plaintiff can compel payment from either obligor.[4]
Application of Collateral Source Doctrine
Our first inquiry being answered, we must next consider whether the employer's uninsured motorist carrier's status as a solidary obligor gives it a right to a credit for payments made by the employer and/or its workers' compensation carrier. Because the civil code expressly provides that payment by one solidary obligor exonerates the other to the extent of that payment to the creditor, payment on the solidary obligation by one debtor should be imputed to the debt owed by the other solidary obligor. This conclusion was reached in Fertitta v. Allstate Insurance Company, 462 So.2d 159 (La.1985). In Fertitta, we were asked to determine whether a tort victim's judgment against a tortfeasor for the full amount of the victim's damages should be reduced by the amount of the victim's pretrial settlement with his underinsured motorist carrier when the latter, as part of the settlement, waived any right of reimbursement or subrogation. We concluded that the victim's uninsured motorist carrier and the tortfeasor were solidarily liable and, relying on the principles of solidarity, held that payment by the victim's uninsured motorist carrier must be imputed to the debt owed by the tortfeasor. In so holding, we expressly rejected arguments urging application of the collateral source doctrine, concluding that the rule does not apply to override principles of solidary liability expressly set forth in the civil code. Fertitta, 462 So.2d at 164 n. 7. Trinity, the uninsured motorist carrier in this case, argues that a similar result should obtain here, and that it should be entitled to a credit in the amount of the disability wage and medical benefits paid by the employer, Sav-Mor, and/or its workers' compensation insurer. The plaintiff, Bellard, counters that the appellate court was correct, and that the collateral source doctrine applies to the present situation to prohibit the credit. We disagree with the plaintiff and the court of appeal, and we find that the collateral source doctrine does not apply to the facts of this case.
The collateral source rule is a doctrine of common law origin, jurisprudentially imported into the law of this state.[5]Bozeman, 03-1016 at 8, 879 So.2d at 697; Louisiana Department of Transportation *668 and Development v. Kansas City Southern Railway Co., 02-2349, p. 6 (La.5/20/03), 846 So.2d 734, 739. Basically, the rule provides that "a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution." Bozeman, 03-1016 at 9, 879 So.2d at 698; Louisiana Department of Transportation and Development, 02-2349 at 6, 846 So.2d at 739. Under the collateral source rule, payments received from an independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer. Id. As a result, the tortfeasor is not allowed to benefit from the victim's foresight in purchasing insurance and other benefits. Bozeman, 03-1016 at 9, 879 So.2d at 698.
Several public policy concerns support the collateral source doctrine. Louisiana Department of Transportation and Development, 02-2349 at 7, 846 So.2d at 739. The concern most often voiced is that the tortfeasor should not gain an advantage from outside benefits provided to the victim independently of any act of the tortfeasor. Id. The objective in this regard is to promote tort deterrence and accident prevention. Id. Another concern advanced is that, absent the collateral source rule, victims would be dissuaded from purchasing insurance or pursuing other forms of reimbursement available to them. Id.
Of the reasons cited in support of the rule, "[t]he major policy reason for applying the collateral source rule to damages has been, and continues to be, tort deterrence." Bozeman, 03-1016 at 12, 879 So.2d at 700. In other words, the rule is grounded in the belief that the tortfeasor should not profit from the victim's prudence in obtaining insurance, and that reducing the recovery by the monies paid by a third party would hamper the deterrent effect of the law. Bozeman, 03-1016 at 15-16, 879 So.2d at 701-702.
One troubling aspect of the collateral source rule with which courts have struggled is the double recovery or windfall that might arise as a consequence of the victim's receipt of an outside payment. The purpose of tort damages is to make the victim whole. This goal is thwarted, and the law is violated, when the victim is allowed to recover the same element of damages twice. See, Albert v. Farm Bureau Insurance Company, 05-2496, p. 4 (La.10/17/06), 940 So.2d 620, 622 ("Louisiana law does not allow for double recovery of the same element of damages."); Gagnard v. Baldridge, 612 So.2d 732, 736 (La. 1993) ("Double recovery would be in the nature of exemplary or punitive damages which are not allowable under Louisiana law unless expressly provided for by statute."). As explained by this court in Bozeman, 03-1016 at 10, 879 So.2d at 699:
For years the Louisiana courts struggled with the so-called "windfall" or "double-dip" aspect of the collateral source rule only to discover that no "windfall" or "double dip" in fact occurred. No "windfall" or "double dip" occurred because the injured party's patrimony was diminished to the extent that he was forced to recover against outside sources and the diminution of patrimony was additional damage suffered by him. [Emphasis in original.]
In Bozeman, this court addressed the conflict that is raised between the two guiding principles of tort damagesto deter wrongful conduct and to make the innocent victim wholewhen the collateral source rule is applied in instances in which an actual windfall or double recovery would be realized by the injured party. We were asked to determine, in Bozeman, whether the collateral source rule applies *669 to medical expenses "written off" or contractually adjusted by healthcare providers pursuant to the federal Medicaid program, under which no consideration is provided by the recipient for the receipt of Medicaid benefits. Ultimately, in holding that the Medicaid recipient is unable to collect the Medicaid "write-off" as damages, we rejected a traditional application of the collateral source rule in favor of a rule more narrowly tailored to better conform with the compensatory goal of tort recovery. In Bozeman, 03-1016 at 22, 879 So.2d at 705-706, we concluded:
Medicaid recipients are unable to collect the Medicaid "write-off" amounts as damages because no consideration is provided for the benefit. Thus, plaintiff's recovery is limited to what was paid by Medicaid. However, in those instances, where plaintiff's patrimony has been diminished in some way in order to obtain the collateral source benefits, then plaintiff is entitled to the full benefit of the bargain, and may recover the full value of his medical services, including the "write-off" amount. [Emphasis supplied.]
In other words, we reasoned that whether the collateral source rule applies depends to a certain extent upon whether the victim has procured the collateral benefits for himself or has in some manner sustained a diminution in his or her patrimony in order to secure the collateral benefits such that he or she is not merely reaping a windfall or double recovery.
After Bozeman, two primary considerations guide our determination with respect to the collateral source rule. The first consideration is whether application of the rule will further the major policy goal of tort deterrence. The second consideration is whether the victim, by having a collateral source available as a source of recovery, either paid for such benefit or suffered some diminution in his or her patrimony because of the availability of the benefit, such that no actual windfall or double recovery would result from application of the rule. An analysis of these two considerations in the instant case leads to the conclusion that the collateral source rule does not apply under the circumstances presented.
First, this is not a case where either the tortfeasor or her insurer is requesting a credit or reduction of damages. Rather, the uninsured motorist carrier for the victim's employer seeks a credit for disability wage and medical benefits paid by the employer and/or its workers' compensation carrier. Therefore, applying the collateral source rule in this instance will not serve the goal of tort deterrence. Allowing the plaintiff to recover the same elements of damage from both his employer's workers' compensation insurer and his employer's uninsured motorist carrier will not further the goal of deterring wrongful conduct by the tortfeasor. Under the facts of this case, the major policy reasons for the collateral source rulethe belief that the tortfeasor should not profit from the victim's prudence in obtaining insurance and other benefits, and that reducing the recovery by the monies paid by a third party would hamper the deterrent effect of tort laware not present. The tortfeasor will not receive any benefit or reduction in liability as a result of the credit; nor will allowing the credit provide any disincentive for the tortfeasor to conform her conduct to standards of reasonableness.
Second, under the facts of this case, should the collateral source rule apply to prohibit a credit for lost wages and medical benefits paid by the employer and/or its workers' compensation insurer, the plaintiff will receive a windfall or double recovery of these elements of damage *670 without having sustained a diminution in his patrimony because of the availability of workers' compensation benefits. In this connection, it is important to note that this is not a case where a right of reimbursement or subrogation exists in favor of the employer and/or its workers' compensation insurer to prevent a double recovery. See, e.g., Johnson v. Fireman's Fund Insurance Company, supra. Such a right of reimbursement is precluded in this case by the terms of the policy of uninsured motorist coverage purchased by the employer. The policy issued by Trinity, the uninsured motorist carrier, excludes coverage for the "direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law." As a result, the employer and/or its workers' compensation insurer cannot seek reimbursement from the uninsured motorist carrier for lost wages paid to and medical benefits paid on behalf of the plaintiff.
Further, unlike sick leave, annual leave, or employer-provided health insurance, workers' compensation benefits cannot be considered a fringe benefit in the nature of deferred compensation that would otherwise be available to the plaintiff but for his injury. To the contrary, workers' compensation benefits are required by law, and that same law prohibits an employer from assessing an employee, either directly or indirectly, with the cost of workers' compensation insurance. LSA-R.S. 23:1163.
Contrary to the court of appeal's reasoning and conclusion, Bellard has not given consideration for workers' compensation benefits by waiving the right to sue his employer for damages because he has no cause of action against his employer who is without fault. The collateral source rule has no application in cases where the plaintiff is injured in the course and scope of his employment at the hands of a third party tortfeasor and the employer is without fault.
In essence, the situation of the plaintiff in this case is not unlike that of the Medicaid recipient in Bozeman. That case instructs that where, as here, the plaintiff pays no enrollment fee, has no wages deducted, and otherwise provides no consideration for the collateral source benefit, the collateral source rule does not apply. Bozeman, 03-1016 at 21, 879 So.2d at 705. This result is especially called for where, as in this case, application of the rule would allow plaintiff to receive a windfall without providing a commensurate deterrent effect, and thereby undermine a major policy concern supporting the collateral source rule.[6]
We therefore find that the collateral source rule does not apply in this instance to allow the plaintiff to be compensated twice for lost wages and medical expenses.
Under the facts of this case, Trinity, the employer's uninsured motorist carrier, and the employer, Sav-Mor, and/or its workers' compensation carrier are solidary obligors. Pursuant to the basic tenets of solidarity, payment by one solidary obligor, as a matter of law, extinguishes the obligation of the other solidary obligor to the extent of the payment. LSA-C.C. art. 1794. As we concluded in Fertitta and reiterate today, the collateral source rule does not *671 apply in this instance to override the principles of solidarity expressly set forth in the civil code.[7] The court of appeal erred in concluding to the contrary and finding that the collateral source rule applies to prevent the uninsured motorist carrier from receiving a credit for disability wage and medical benefits paid to or on behalf of the plaintiff by the employer and/or its workers' compensation insurer.
Trinity, the employer's uninsured motorist carrier, is entitled to a credit in the amount of the payments made by Sav-Mor and/or its workers' compensation insurer to or on behalf of plaintiff. As we have explained, this result is necessary in order to comply with the principles of solidary liability. This result does not relieve Trinity of liability for amounts not paid by the employer and/or its workers' compensation insurer, at least to the extent of Trinity's policy limits, and it does not grant Trinity a windfall. Rather, this result merely enforces the contractual rights negotiated between Trinity and the employer when the employer purchased uninsured motorist coverage, and, in the process, prevents the plaintiff from receiving a double recovery. Trinity is, therefore, entitled to a credit for all compensation benefits, in the form of medical expenses and lost wages, received by the plaintiff from his employer and/or its workers' compensation insurer.
Causation and Damages
The second issue we granted writs to examine is whether the district court erred in its assessment of causation and damages. Bellard contends that although the district court correctly found that the August 26, 2002 collision was a cause of his injuries, the court erroneously relied upon evidence of the "force of impact" in determining the amount of damages he sustained. In support of this contention, Bellard cites to the district court's oral reasons for judgment in which the court candidly discusses the factors that proved to be perplexing and contributed to the court's difficulty in rendering judgment in this case. In particular, Bellard seizes upon a comment by the district court to the effect that "I've seen in the evidence that those latter two accidents were worse as far as the impact than the first" to argue that the court erroneously looked to the force of the impact with Gayle's vehicle to determine the amount of damage he sustained.
The problem with Bellard's argument is two-fold. First, Bellard's contentions fail to take into account the well-settled rule that the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment. LSA-C.C.P. art. 1918; Burmaster v. Plaquemines Parish Government, 07-1311, p. 1 (La.8/31/07), 963 So.2d 378, 379. Second, Bellard's argument takes the district court's comments out of context. It is clear from a reading of the entirety of the district court's reasons that the court struggled with the issue of causation, and in particular, with the role, if any, the subsequent accidents played in Bellard's injuries. Thus, the court mentioned the force of the impacts as one of the factors that gave the court pause when assessing whether the first accident was the one that caused all of Bellard's injuries. The court also cited to testimony establishing that *672 Bellard indicated at the time of the accident that he was not injured as another factor that it considered. Ultimately, however, the district court concluded, based upon the testimony from Bellard's treating physician, that Bellard's injuries and the subsequent surgeries were caused by the first accident. In accordance with this conclusion, the district court awarded Bellard the full amount of his medical expenses and past wage loss, a further confirmation of the court's finding that the August 26, 2002 accident caused Bellard's injuries and necessitated the subsequent surgeries. There is no evidence to indicate that the district court relied upon the force of the August collision, or the force of the subsequent collisions, to inappropriately assess causation or damages.
In fact, a review of the entire record indicates to the contrary. The district court's written reasons for judgment on Trinity's motion for summary judgment were issued after the close of testimony, and after the district court had considered all the evidence presented at trial. Those reasons confirm that the district court ultimately found that the August 2002 accident was the cause of Bellard's injuries and subsequent surgeries. The court expressly states: "Plaintiff sustained personal injuries as a result of this accident which required numerous surgeries to correct." Thus, while the court obviously struggled with the causation issue, it ultimately resolved that issue in favor of Bellard, and, consistently with the court's finding, awarded him the full amount of his medical expenses and past wage loss. The district court did not erroneously rely upon the "force of impact" evidence to affect its determination with respect to causation.
Future Wage Loss
Although agreeing with Bellard's assertion that the August 2002 accident caused his injuries and necessitated the subsequent surgeries, ultimately, the district court disagreed with Bellard's contention that his injuries render him totally and permanently disabled. This factual determination is subject to review for manifest error. Ferrell v. Fireman's Fund Insurance Co., 94-1252, pp. 3-4 (La.2/20/95), 650 So.2d 742, 745 ("[A] trial court's factual findings will not be upset unless they are manifestly erroneous or clearly wrong.") In such a review, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993). If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. at 882-883. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. Id. at 883. Further, where the findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the findings of fact. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Indeed, where the factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. Id. at 845. This rule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony. Lasyone v. Kansas City Southern Railroad, 00-2628, p. 13 (La.4/3/01), 786 So.2d 682, 693.
In rendering judgment in this case, the district court concluded that Bellard is not totally and permanently disabled *673 from returning to the workforce and awarded him $29,822.00 for loss of future earning capacity. This award, which Bellard protests, is based on loss of earning capacity estimates provided by Trinity's expert economist, Dr. R. Douglas Womack. The estimates are based on a report by Dr. Grimes, an expert retained by Bellard's counsel to perform a vocational evaluation of Bellard. Dr. Grimes' report opines that Bellard has the ability to obtain a GED and receive successful training in a light-duty capacity job within twenty months of trial. Although Dr. Grimes' report was prepared approximately two years prior to trial and prior to the bilateral carpal tunnel syndrome and cervical spine surgeries which Bellard eventually underwent, Dr. Bernauer, Bellard's treating physician and surgeon, testified that Bellard's carpal tunnel surgeries were successful and that he has no residual disability as a result of those procedures, and that his cervical spine surgery, while still being followed, was also successful. Dr. Bernauer opined that Bellard's surgeries render him susceptible to adjacent segment syndrome and, therefore, recommended that Bellard not return to work, but Dr. Bernauer also acknowledged that the best way to determine what Bellard can and cannot do is to conduct a functional capacity evaluation, which had not been done as of the time of trial. In contrast to this testimony, Dr. Douglas A. Bernard, an orthopedic surgeon who performed an independent medical examination of Bellard, testified, that as a result of his lumbar spine surgery, Bellard has a 12 percent anatomical disability rating, but that he should be able to return to the workforce and engage in an occupation that requires lifting on a regular basis of up to 60 pounds. Dr. Bernard was of the opinion that the August 2002 accident did not cause Bellard's carpal tunnel problems, and that cervical spine surgery was not indicated.
The district court obviously considered this competing and contradictory expert testimony and rejected, in part, Dr. Bernauer's opinion that Bellard is functionally disabled and unable to return to the workforce, giving more weight to the opinions of Dr. Bernard and Dr. Grimes, who opined that Bellard's test results "actually exceeded expectations" and that he "has excellent potential for return to the labor force in spite of the significant physical limitations." In considering expert testimony, the trier of fact may accept or reject, in whole or in part, the opinion expressed by an expert, even to the point of substituting its own common sense and judgment for that of an expert witness, where, in the factfinder's opinion, such substitution appears warranted by the evidence as a whole. Green v. K-Mart Corporation, 03-2495, p. 5 (La.5/25/04), 874 So.2d 838, 843. Given Dr. Grimes' favorable evaluation of Bellard's intellectual abilities and potential for re-training and Dr. Bernauer's admission that a functional capacity evaluation would be a more accurate indicator of what Bellard can and cannot do after his surgeries, we cannot say that the district court erred in its evaluation of the evidence.
Under the circumstances presented, after reviewing the record as whole, we find that the district court was not clearly wrong or manifestly erroneous in its factual determinations with respect to causation and damages for loss of future earning capacity. Those determinations are supported by the record, even though Bellard suggests another view. Contrary to Bellard's contention, therefore, the court of appeal correctly affirmed the district court's award for loss of future earning capacity.
*674 General Damages
Finally, we turn to Bellard's contention that the district court's award of general damages in the amount of $50,000 was an abuse of discretion.[8] In examining this contention, we are guided by the standards set forth in Duncan v. Kansas City Southern Railway Co., 00-0066 (La. 10/30/00), 773 So.2d 670:
General damages are those which may not be fixed with pecuniary exactitude; instead, they "involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms." Keeth v. Dept. of Pub. Safety & Transp., 618 So.2d 1154, 1160 (La.App. 2 Cir.1993). Vast discretion is accorded the trier of fact in fixing general damage awards. La. Civ. Code art. 2324.1; Hollenbeck v. Oceaneering Int., Inc., 96-0377, p. 13 (La.App. 1 Cir. 11/8/96); 685 So.2d 163, 172. This vast discretion is such that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Youn, 623 So.2d at 1260. As we explained in Youn:

Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award.

Id. at 1261.
The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. Cone v. National Emergency Serv. Inc., 99-0934 (La.10/29/99), 747 So.2d 1085, 1089; Reck v. Stevens, 373 So.2d 498 (La.1979). Only after a determination that the trier of fact has abused its "much discretion" is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976).
Duncan, 00-0066 at pp. 13-14, 773 So.2d at 682-683. With these principles in mind, we review the general damage award in this case.
As stated above, the district court awarded Bellard general damages in the amount of $50,000, after noting that Bellard had already received $50,000, the policy limits of Gayle's liability insurance. Bellard argues that this sum is abusively low in light of the four surgeries he underwent, the pain he endured, the residual impairment he has with respect to tasks requiring heavy lifting, and the major change to his lifestyle that he has experienced as a result of his injuries. We agree that the district court abused its discretion in its award.
In awarding the full measure of past medicals and past lost wages, the district court attributed all of Bellard's injuries to the August 2002 accident. In the August *675 2002 accident, Bellard sustained a cervical spine injury, resulting in a three-level fusion; a lumbar spine injury, resulting in a one-level fusion; and bilateral carpal tunnel syndrome, resulting in bilateral carpal tunnel release surgeries. He also suffered emotional distress as a result of the accident, leading him to a failed suicide attempt and treatment for depression. His medical treatment stretched from the date of injury in 2002 to the date of trial in 2006, at which time Bellard was still recovering from the cervical spine surgery. During this entire period, he was on medication to relieve persistent pain. He has been restricted in his ability to perform basic household chores and has been unable to enjoy the frequent hunting and fishing forays which he was accustomed to prior to the accident.
Following our admonition in Duncan, and considering the effects of the particular injury to this particular plaintiff under the particular circumstances of this case, we agree with Bellard and conclude that the district court abused its discretion in its general damage award. We find an appropriate award of general damages for Bellard's pain and suffering to be $250,000.00, the lowest amount reasonably within the trier of fact's discretion for the particular injuries proven to have been sustained by this particular plaintiff.[9] We therefore increase the $50,000.00 general damage award to $200,000.00.[10]

CONCLUSION
Based on the foregoing and for the aforementioned reasons, we reverse the judgment of the court of appeal and reinstate the judgment of the district court insofar as it grants the uninsured motorist carrier, Trinity, a credit for the $334,040.60 in medical expenses paid by Sav-Mor and/or its worker's compensation carrier on behalf of the plaintiff. We amend the district court judgment to reflect that Trinity is also entitled to a credit for wage indemnity benefits paid to the plaintiff by Sav-Mor and/or its workers' compensation carrier. Finally, we increase the award of general damages to plaintiff to $200,000.00. In all other respects, the judgment is affirmed.
We remand this case to the district court to confect an appropriate monetary judgment consistent with the views expressed herein.
REVERSED IN PART; AMENDED IN PART AND AS AMENDED AFFIRMED; REMANDED.
Calogero, C.J., concurs and assigns reasons.
VICTORY and TRAYLOR, JJ., concur in part, dissent in part and assign reasons.
KNOLL, J., concurs in result in part and dissents in part.
CALOGERO, Chief Justice, concurring and assigning Reasons.
In my dissent to the majority's opinion in Hoefly v. Government Employees Insurance Co., 418 So.2d 575 (La.1982), I set forth my belief that a tortfeasor and the plaintiff's UM insurance carrier are not solidary obligors. In my view, the requirements for solidary liability set forth *676 in La. Civ.Code art. 1794 (then La. Civ. Code art. 2091) were not met because payment by a UM carrier does not exonerate the tortfeasor. I continue to subscribe to that position. I also believe that the collateral source doctrine would operate to prevent the plaintiff's own UM insurance carrier from receiving a credit for the amounts the plaintiff received from his employer's workers' compensation carrier.
However, this case does not involve the plaintiff's UM insurance carrier, but instead involves the employer's UM insurer. The issue presented here is whether the employer's UM insurance carrier is entitled to a credit for the amounts the plaintiff received from the employer's workers' compensation insurer. I concur in the majority's decision in this case. After Hoefly, in Williams v. Sewerage & Water Bd., 611 So.2d 1383 (La.1993), this court unanimously held that a plaintiff's employer and a tortfeasor were solidary obligors such that the filing of suit against the tortfeasor interrupted prescription in later-filed suit against the employer seeking recovery of workers' compensation benefits. I subscribed to that opinion and agree that the principles set forth in Williams apply to this case involving the employer's UM insurance carrier and the employer's worker's compensation carrier. My main problem with the Hoefly decision is diminished here by the fact that this case involves the employer's UM insurance carrier, not the plaintiff's personal UM insurance carrier.
I further agree that the collateral source doctrine does not apply to this case both because the solidary obligor rule applies and because the plaintiff's patrimony was not diminished by the employer's procurement of UM insurance coverage.
VICTORY, J., concurring in part, dissenting in part, and assigning reasons.
I concur in the portion of the majority opinion holding that an employer's uninsured motorist carrier is entitled to a credit for medical expenses and disability wages paid to or on behalf of an injured worker by a workers' compensation carrier. However, for the reasons stated by Chief Justice Calogero in his concurring opinion in this case, I also disagree with this Court's holding in Hoefly v. Government Employees Insurance Co., 418 So.2d 575 (La. 1982), which found solidary liability between a tortfeasor and a UM carrier.
I dissent from the portion of the majority opinion which increases the trial court's general damage award from $50,000.00 to $200,000.00. In my view, the trial court's findings in this regard were not manifestly erroneous. In its "Oral Reasons," the trial court rationally explains why it set the damage award at $50,000 instead of some higher award, which basically came down to a credibility call. The trial court recounted the evidence presented, including that the plaintiff was involved in two accidents subsequent to the first accident at issue, and that these two subsequent accidents "were worse" than the first. In light of that, he found the plaintiff's testimony that "he didn't get hurt any worse in that accident or the other accident" to be "suspicious." Further, the trial court stated that it "still [had] problems believing that Mr. Bellard is totally disabled as a result of everything that's happened . . . [i]t's hard for me to accept that." Finally, in awarding the plaintiff $50,000.00 in general damages, the trial court pointed out that would bring the total damages to $142,244, and would be in addition to the medicals that were already paid and credited to the UM carrier in the amount of $334,040.60. In light of the above, I do not believe the trial court's award of $50,000.00 in general damages was manifestly erroneous.
For the reasons stated herein, I respectfully concur in part and dissent in part.
*677 TRAYLOR, J., concurring in part, and dissenting in part, and assigning reasons.
I agree with the majority opinion's conclusion that an employer's uninsured motorist carrier is entitled to a credit for medical and disability wage benefits paid to or on behalf of an injured worker by a workers' compensation carrier.
However, I dissent from the majority opinion's determination that the trial court's general damage award was clearly wrong. In the instant case, the trial court awarded plaintiff general damages in the amount of $50,000 after taking into consideration the $50,000 recovered by plaintiff from the defendant in settlement. In addition to plaintiff's medical treatment discussed in the majority opinion, the trial court also considered the testimony of the defendant's mother who was at the scene of the accident at issue. She testified that plaintiff told her he did not even realize he had been in an accident until he looked in his rearview mirror and saw smoke coming from defendant's car. The trial court further considered the minor damage sustained by the truck driven by plaintiff and the facts that plaintiff's employer never took this truck out of service and no repairs were deemed necessary. The trial court noted that plaintiff did not obtain medical care until eight days after the accident and that plaintiff told a co-worker that he was not injured in the accident. Finally, subsequent to the accident at issue, plaintiff intentionally ran his car into a tree in a suicide attempt. In addition, and also subsequent to the accident at issue, plaintiff ran a stop sign and broad-sided a car. By plaintiff's own testimony, these collisions were significantly more severe than the earlier rear-end collision at issue herein.
It is well settled that a court of appeal may not set aside a factfinder's conclusions in the absence of "manifest error" or unless it is "clearly wrong". Rosell v. ESCO, 549 So.2d 840 (La.1989). Further, if a trial court's findings are reasonable in light of the record reviewed in its entirety, an appellate court must affirm, even if the appellate court would have made a different finding. Touchard v. SLEMCO Electric Foundation, 99-3577 (La.10/17/00), 769 So.2d 1200 (on rehearing); LeJeune v. Union Pacific Railroad, et al. 97-1843 (La.4/14/98); 712 So.2d 491. After reviewing the record as a whole, I find that the trial court was not clearly wrong in its award of general damages to plaintiff and that the record supports the trial court's determination in this regard.
KNOLL, J., concurring in part in result, dissenting in part.
I concur partly in the result that the collateral source doctrine does not apply in this instance to prohibit the employer's uninsured motorist carrier from receiving a credit for the medical and wage benefits paid by the workers' compensation insurer.
I dissent from the majority's increase of the general damage award to the plaintiff, finding the trial judge did not abuse his vast discretion in awarding $50,000 in general damages.
NOTES
[1] Our decision in Hoefly was rendered prior to the legislature's revisions of the obligations articles by 1984 La. Acts, No. 331, § 1, effective January 1, 1985. However, as the official revision comments to LSA-C.C. art. 1794 indicate, the revised article restates the principles contained in LSA-C.C. art. 2091(1870). It does not change the law or our analysis. See, Williams v. Sewerage & Water Board of New Orleans, 611 So.2d 1383 (La.1993).
[2] LSA-R.S. 22:1406(D) was redesignated as LSA-R.S. 22:680 by 2003 La. Acts, No. 456.
[3] In the absence of a contract or agreement providing to the contrary, the employer and/or its workers' compensation insurer would have the right to be reimbursed for the workers' compensation benefits paid by it from any tort damages recovered from the employer's uninsured motorist carrier, thereby preventing a double recovery. LSA-R.S. 23:1101; Johnson, 425 So.2d at 227.
[4] To the extent the cases relied on by the court of appeal, Leger v. Sonnier Exterminating Company, supra, and Viada v. A & A Machine Works, Inc., supra, conflict with our holding here, they were erroneous.
[5] The common law rule is set forth in RESTATEMENT (SECOND) OF TORTS, § 920 A as follows:

(1) A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.
(2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.
[6] In reaching this conclusion, we remain mindful of the admonition that the focus of our analysis when examining the collateral source rule should be on the nature of the off-set or credit vis-a-vis the tortfeasor rather than the tort victim. Bozeman, 03-1016 at 18, 879 So.2d at 703. Adherence to such an analysis in this instance underscores the fact that allowing the credit to the employer's uninsured motorist carrier will not inure to the benefit of the tortfeasor, will not allow the tortfeasor to receive a "windfall," and will not undermine the deterrent effect of tort law.
[7] The situation presented here is distinguishable from that presented by the victim's health and accident insurer, which, we have held, is not solidarily bound with the tortfeasor, Martin v. Louisiana Farm Bureau Casualty Insurance Company, 94-0069 (La.7/5/94), 638 So.2d 1067, and thus falls within the ambit of the collateral source rule. See also, Fertitta, 462 So.2d at 164, n. 7; Wheelahan v. Eller, 446 So.2d 442 (La.App. 4 Cir.), writ denied, 447 So.2d 1073 (La. 1984).
[8] This award was made taking into consideration the $50,000 Bellard recovered in settlement with the tortfeasor and her liability insurer.
[9] See, LeBlanc v. Acadian Ambulance Service, Inc., 99-271, pp. 31-32 (La.App. 3 Cir. 10/13/99), 746 So.2d 665, 683; Spangler v. Wal-Mart Stores, Inc., 95-2044, p. 6 (La.App. 1 Cir. 5/10/96), 673 So.2d 676, 680, writs denied, 96-1450, 96-1407 (La.9/27/96), 679 So.2d 1353.
[10] We conclude, as did the district court, that the $50,000 previously paid in settlement by Gayle's liability insurer should be credited against the total general damages of $250,000.