**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 28, 2009

Charles R. Fulbruge III
Clerk

No. 07-31017

SHAWN MILLER, etc

Plaintiff

v.

GORSKI WLADYSLAW ESTATE, Et Al

Defendants

-------------------------------------------------------------------------------------------------------

GUADALUPE GUERRA, individually and on the behalf of Cindy Guerra
Estate; AMELIA GUERRA; RENE GARZA, individually and on the behalf of
Jennifer Garza Estate; PATRICIA GARZA; JOSE ANGEL ALFARO, JR;
LISA GUERRA

Plaintiffs - Appellees-Cross-Appellants

v.

ALLIED VAN LINES INC; ILLINOIS NATIONAL INSURANCE CO

Defendants - Appellants-Cross-Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:04-CV-1250

Before DAVIS, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

The court has carefully reviewed this appeal in light of the briefs, oral arguments, and pertinent parts of the record. Having done so, we find no reversible error of law or fact and therefore AFFIRM for essentially the reasons stated by the trial court as briefly explained below.

## I. Facts

In 2003, an Allied Van Lines, Inc. eighteen-wheeler drove into the rear end of a Suburban occupied by members of the Guerra and Garza families. Two passengers, Cindy Guerra and Jennifer Garza, died in the accident after the Suburban was engulfed in flames. Two others, Lisa Guerra and Joe Alfaro, were horribly burned and will require intermittent hospitalization and medical care for the rest of their lives. Guadalupe and Amelia Guerra were in the vehicle and watched Cindy, their youngest daughter, die as the Suburban burned. They also watched as Lisa, their eldest daughter, was severely burned. Nine other vehicles were involved in the accident.

The Guerra and Garza families filed this suit against Allied, which had five layers of insurance totaling $110 million. Appellant Illinois National insured the fourth layer with $25 million coverage in excess of $30 million. Before trial, Allied and insurers in the lower layers of coverage (the "Settling Insurers") paid several other claimants injured in the accident a total of $6,477,900. Additionally, the Settling Insurers and the Plaintiffs in the present case entered into a partial settlement agreement that released all liability within the limits of the Settling Insurers' policies in exchange for a payment of $21 million. In effect, the Plaintiffs waived $2,522,100 in damages, which was the difference between the settlement and the remaining limits of the Settling

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Insurers' policies. The Plaintiffs expressly reserved their right to a direct action against the non-settling excess insurers, including Illinois National, for damages exceeding the Settling Insurers' policy limits under a doctrine of Louisiana insurance law discussed in *Gasquet v. Commercial Union Insurance Co.*, 391 So. 2d 466, 471-72 (La. Ct. App. 1980).

A damages-only jury trial was conducted on the Guerra and Garza claims. The jury returned a verdict in Plaintiffs' favor in the aggregate amount of $31,903,650, which included wrongful death damages and bystander awards. In entering judgment, the district court considered the prior payments by the Settling Insurers to determine Illinois National's settlement credit. The district court denied Illinois National's various motions for remittur of some of the damages. The company has not appealed the direct awards to Lisa Guerra and Joe Alfaro.

## II. Discussion

### A. Settlement Credit

The first issue raised by Illinois National is the proper calculation of the settlement credit. Illinois National raises only questions of law concerning the calculation of the settlement credit, which are reviewed de novo. *See Davis v. Odeco, Inc.*, 18 F.3d 1237, 1245 (5th Cir. 1994).

Illinois National asserts that it was entitled to a settlement credit for the full $30 million face value of the Settling Insurers' policies, without considering payments to other claimants by the Settling Insurers, based on language in *Gasquet* stating that the excess insurer be given a "'credit' for the policy limits of the primary insurer." *Gasquet*, 391 So. 2d at 471. This is too rigid an interpretation of *Gasquet*. *Gasquet* did not involve settlements or judgments with other injured parties; thus the fact that *Gasquet* referred to the underlying insurers' "policy limits" rather than "*available* policy limits" is not dispositive.

Including payments to other claimants in the calculation of the credit is consistent with Illinois National's excess insurance policy. Allied incurred at least $38,381,550 in liability as a result of the accident, $31,903,650 in the form of damages awarded to the Plaintiffs in the present case, and $6,477,900 paid by the Settling Insurers to other claimants injured in the same accident. The trial court gave a credit that reduced Illinois National's liability to $8,381,550. As a result, the judgment of the trial court did not require Illinois National to pay any part of the first $30,000,000 of liability incurred by its insured. This is precisely what Illinois National bargained for as an excess insurer.

Illinois National also argues that the trial court erred in considering the payments to other claimants because there is no evidence in the record that the payments were "reasonable and in good faith." The case relied on by Illinois National actually supports the opposite conclusion. In *Insurance Co. of North America v. Binnings Construction Co.*, 288 So. 2d 359 (La. Ct. App. 1974), the Louisiana Court of appeals held that an insurer "is entitled to a presumption of law that it has exercised reasonableness and good faith in making the settlements." *Id.* at 362. Unlike Illinois National here, the insured in *Binnings* successfully created a question of reasonableness concerning two of the 130 settlements by offering evidence that the injuries complained of in those two settlements were insignificant compared to the settlement amounts. The trial court did not err in calculating the settlement credit in the present case.

## B.    Guadalupe Guerra's Bystander Claim

Illinois National also challenges the sufficiency of the evidence supporting the bystander claim of Guadalupe Guerra, arguing that Guadalupe does not have sufficient recollection of the details of the accident to allow the jury to find bystander damages. "[O]ur standard of review with respect to a jury verdict is especially deferential. Therefore, judgment as a matter of law should only be granted if the facts and inferences point so strongly and overwhelmingly in the

movant's favor that reasonable jurors could not reach a contrary conclusion." *Coffel v. Stryker Corp.*, 284 F.3d 625, 630 (5th Cir. 2002) (quotations and citations omitted).

Unlike the cases cited by Illinois National, where the plaintiffs had no recollection of the events and there was no other evidence that the plaintiffs were aware of the harm caused by the event as it occurred, there was sufficient evidence here from which a jury could have concluded that Guadalupe was aware of the tragedy as it unfolded. We find sufficient evidence to support the jury's verdict.

## C.    Remittitur

Illinois National also argues the trial court abused its discretion when it refused to suggest a remittitur of a portion of the non-economic damages awarded in this case.[1] Under Louisiana law,[2] we must first decide whether the trier of fact abused its "much discretion," and only after concluding that it has may we resort to prior awards for the purpose of determining the highest point which is reasonably within that discretion. *Bellard v. Am. Cent. Ins. Co.*, 980 So. 2d 654, 674 (La. 2008); *see also Duncan v. Kan. City S. Ry. Co.*, 773 So. 2d 670, 682-83 (La. 2000); LA. CIV. CODE art. 2324.1 ("In the assessment of damages in case of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.").

The damages awarded in the present case were large, but the circumstances were extreme and the injuries suffered by Plaintiffs were severe.

---

[1] Illinois National does not challenge the $21,403,650 awarded to Lisa Guerra and Jose Alfaro, Jr.

[2] "[I]n an action based on state law but tried in federal court by reason of diversity of citizenship, a district court must apply a new trial or remittitur standard according to the state's law controlling jury awards for excessiveness or inadequacy, and appellate control of the district courts ruling is limited to review for 'abuse of discretion.'" *Foradori v. Harris*, 523 F.3d 477, 498 (5th Cir. 2008) (citation omitted); *see also Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 434 (1996).

This case presents a classic jury question, and the district court deferred to the jury's determination. We conclude that the district court did not abuse its discretion when it declined to suggest a remittitur.

## D. Prejudgment Interest

Finally, Plaintiffs concede that the district court should be affirmed under *Toston v. Nat'l Union Fire Ins. Co.*, 942 So. 2d 1204 (La. Ct. App. 2006), which controls their cross-appeal concerning the calculation of prejudgment interest.

## III. Conclusion

For the reasons discussed above, we AFFIRM.