# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**21-354**


**LASHONDRA JONES**

**VERSUS**

**MARKET BASKET STORES, INC.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2017-3573
HONORABLE RONALD F. WARE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## VAN H. KYZAR
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, John E. Conery, D. Kent Savoie, Van H. Kyzar, and Sharon Darville Wilson, Judges.


**REVERSED AND RENDERED.**


Conery, Judge, concurs in part, dissents in part, and assigns reasons.

Van C. Seneca
Christopher P. Ieyoub
Erik N. Fain
Plauche, Smith & Nieset, LLC
P. O.  Drawer 1705
Lake Charles, LA 70602
(337) 436-0522
COUNSEL FOR DEFENDANT/APPELLANT:
    Market Basket Stores, Inc.

Rex D. Townsley
Jackson T. Brown
David H. Hanchey
Hannah E. Mayeaux
The Townsley Law Firm, LLP
3102 Enterprise Boulevard
Lake Charles, LA 70601
(337) 478-1400
COUNSEL FOR PLAINTIFF/APPELLEE:
    Lashondra Jones

**KYZAR, Judge.**

In this merchant liability personal injury action, the defendant, Market Basket Stores, Inc., appeals from a trial court judgment rendered in favor of the plaintiff, Lashondra Jones, for damages in the amount of $45,738.95. For the reasons set forth, we reverse and render judgment.

## FACTS AND PROCEDURAL HISTORY

Ms. Jones filed the instant personal injury claim against Market Basket, as a result of injuries she suffered on July 12, 2017, while shopping at its Lake Charles, Louisiana store. She alleged that she suffered injuries to her right hip and knee when she "stepped up onto a platform to grab a watermelon from a watermelon display[,]" and the platform, "[s]uddenly and without warning or notice," "disassembled from under her," causing her to fall. In answering Ms. Jones' petition, Market Basket denied liability and, alternatively, plead the affirmative defense of comparative negligence. It further requested trial by jury. Thereafter, the parties entered into a written stipulation that Ms. Jones' damages, exclusive of interest and costs, did not exceed $50,000.00.

Following a bench trial, the matter was taken under advisement, after which the trial court rendered the following oral ruling:

> The Plaintiff, Ms. Lashondra Jones[,] was injured while shopping with her son Devon as she attempted to remove a watermelon from a large box, sitting on top of a wooden pallet, fully encased in a so-called plastic pallet guard.
>
> The pallet guard was placed around the wooden pallet so that customers would not be able to place their foot intentionally or otherwise, accidentally foot slipping into the pallet between the top and bottom of the pallet which probably measured 45 inches high.
>
> That was the purpose of having the pallet guard around the pallet. There was no signs on or near the display of watermelons to discourage shoppers from stepping up onto the pallet and/or pallet guards or warn of a possible hazard.

When Ms. Jones stepped up onto the pallet guard to get a watermelon from the display, the large cardboard box, it – the box – collapsed, causing her to fall onto the box on her right side and sustained personal injuries for which Market Basket is liable.

The Court finds the display presented an unreasonable risk of harm which was reasonably foreseeable. The Court further finds that Market Basket had at the very least constructive notice of the potentially dangerous condition on its premises and failed to exercise reasonable care to protect its customers.

Market Basket argues it had no reason to suspect that Ms. Jones or anyone else would use the guard as a step. The Court finds it is more than reasonable to foresee that a customer would step upon the pallet with or without a pallet guard to retrieve a watermelon from its elevated container.

The way the box contained the watermelons was situated, along with colorful arrows on each corner of the box, pointing down to the word, "Step," and also the pallet guards providing additional width to the top of the pallet practically invites someone to use the pallet as a step. One could easily foresee someone instinctively doing that.

The cause for Market Basket to improve the safety condition of this particular watermelon display for its customers is not cost prohibitive and could be easily done.

Mr. English, an expert accepted by the Court as an expert in safety, opined that safety could be improved in several ways that was not cost prohibitive.

The Court finds Mr. English – excuse me – the Court finds Ms. Jones and her son were credible witnesses in describing the fall. The Court also finds Mr. English to be a credible witness. His opinions and conclusions were thoughtful and well-explained. He did not overreach or go extremes in providing his testimony by way of answering the questions posited to him.

In consideration of the foregoing, the Court awards the following damages:

Pain and suffering, $35,000; loss of enjoyment of life, $10,000; medicals at seven-hundred, thirty-eight, ninety-five dollars (sic.) [sic] All of these matters would include judicial interest, and costs are assessed to Market Basket[.]

Judgment was rendered in this matter on July 14, 2020. It is from this judgment that Market Basked perfected the instant appeal.

On appeal, Market Basket raises four assignments of error:

1. The trial court erred in finding Market Basket liable for Ms. Jones [sic] accident even though there was no evidence that Market Basket had actual or constructive notice of any defect in the watermelon display without conducting any analysis under of the elements under La. R.S. 9:2800.6.

2. The trial court erred in finding Market Basket at fault for causing Ms. Jones [sic] accident and exonerating Ms. Jones from fault.

3. The trial court erred in accepting testimony of Jason English as a substitute for evidence that Market Basket created an unreasonably hazardous condition or had notice of an unreasonably hazardous condition.

4. The trial court was manifestly erroneous in awarding $45,000 in general damages.

## OPINION

In its first three assignments of error, Market Basket asserts that the trial court erred in finding it liable for Ms. Jones' accident pursuant to La.R.S. 9:2800.6, by failing to find comparative fault on the part of Ms. Jones, and by finding that the elements of La.R.S. 9:2800.6(B) were established through Mr. English's testimony rather than by actual evidence establishing the existence of an unreasonably hazardous condition or the notice requirement. Ordinarily, findings of fault and comparative fault are factual determinations that are reviewed pursuant to the manifest error—clearly wrong standard of review. *Barton v. Wal-Mart Stores, Inc.*, 97-801 (La.App. 3 Cir. 12/10/97), 704 So.2d 361. However, as stated in *Said v. Federated Rural Electric Insurance Exchange*, 21-78, p. 3 (La. 4/20/21), 313 So.3d 1241, 1243 (per curiam):

If a trial judge commits consequential error by denying the jury relevant, admissible evidence, or by admitting evidence that should have been excluded, the fact finding process is interdicted; thus, the verdict is tainted. See **McLean v. Hunter**, 495 So.2d 1298, 1304 (La. 1986). Generally, when a legal error interdicts the fact finding process, the manifest error standard no longer applies. If the record is otherwise complete, the reviewing court should conduct a *de novo* review and decide which party should prevail by a preponderance of the evidence.

**Landry v. Bellanger**, 02-1443, p. 15 (La. 5/20/03), 851 So.2d 943, 954; **Gonzales v. Xerox Corporation**, 254 La. 182, 320 So.2d 163 (1975); **Ragas v. Argonaut Southwest Insurance Co.**, 388 So.2d 707, 708 (La. 1980); **Savin v. Allstate Insurance Company**, 579 So.2d 453, 457 (La. App. 1 Cir. 1991); **Moore v. Clark**, 517 So.2d 293, 302 (La. App. 1 Cir. 1987).

Thus, the standard of review applied in this matter may depend on our resolution of the third assignment of error. If the trial court erred by admitting the testimony of Mr. English, our review is *de novo*. Thus, we will review this issue first.

### *Expert Testimony*

Louisiana Code of Evidence Article 702(A) provides for the admissibility of expert testimony, as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (2) The testimony is based on sufficient facts or data;
>
> (3) The testimony is the product of reliable principles and methods; and
>
> (4) The expert has reliably applied the principles and methods to the facts of the case.

Mr. English was tendered and accepted by the trial court as an expert in the field of safety engineering. He testified that his field of expertise, as it applied to the instant case, involved fall prevention, both workplace and public sector; workplace safety; premises safety; human factors and ergonomics; falling objects and contact with objects; machine guarding; and retail safety, product displays, and falling merchandise. Mr. English testified that he has a Bachelor of Science degree in Industrial Engineering with a specialty in System Safety Engineering and a Master

4

of Science degree in the field of safety engineering, both from Texas A&M University; he is a licensed professional engineer in the State of Texas; he is a board-certified safety professional; and he is a member of numerous national professional societies. He further stated that he had been admitted as an expert in approximately forty trials and deposed between 250 to 300 times.

Mr. English was questioned extensively on cross examination as to his qualifications as an expert witness relative to the particulars of the instant case:

Q. Have you ever designed a pallet guard before?

A. I have not designed a pallet guard, no.

Q. Have you ever used a pallet guard?

A. I've not personally used one. I don't -- I don't really deal in pallets. Although, I have been exposed to them and am familiar with them based on my retail -- while working retail safety.

Q. Have you gone to the Market Basket store where this accident occurred?

A. Not to my knowledge and not relative to this case, no.

Q. Have you touched any type of pallet guard, measured it to measure the height of the watermelon bin in connection with this case?

A. Specific to this case, no I have not. I have not been to the store.

Q. No, that's not what I asked you. I already asked you whether you went to the store. You have not. You have not gone to any Market Basket store in connection with this case, correct?

A. Not in connection with this case, no.

Q. You haven't looked at any pallet guards in connection with this case, correct?

A. Only the provided photographs.

Q. You have not looked at any pallet guards in connection with this case, correct?

A. Are you -- are you speaking of in person?

5

Q. That's -- yes, sir, in person.

A. No. Again, I have not visited this store to inspect their particular guards.

Q. And you've never designed a pallet guard?

A. That's correct.

Q. You've never worked with any manufacturer that's designed a pallet guard?

A. That's correct. I -- I work for myself.

Q. You've never consulted with a manufacturer of a pallet guard?

A. I have not, no.

Counsel for Market Basket then voiced an objection to Mr. English's qualifications as an expert witness. Prior to ruling, the trial court sought clarification from Mr. English relative to his familiarity with pallet guards:

Q. [A]re you knowledgeable and familiar with and have some degree of experience with pallet guards and what purports to be pallet guards, pallet wraps, pallet covers, whatever you want to call them, and their intended purpose and function and what they're designed to do and, I guess prevent, and sometimes cause? Are you familiar with those types of things?"

A. Absolutely, yes.

Following this response, the trial court accepted Mr. English as an expert in the field of safety engineering.

The trial court has great discretion in determining who should qualify as an expert and whether expert testimony is admissible, and its decision in regard to those issues will not be disturbed on appeal in the absence of clear error. *Mistich v. Volkswagen of Ger., Inc.*, 95-939 (La. 1/29/96), 666 So.2d 1073, *on reh'g on other grounds*, 95-939 (La. 11/25/96), 682 So.2d 239; *Massie v. Cenac Towing Co., Inc.*, 00-1596 (La.App. 3 Cir. 4/25/01), 796 So.2d 14, *writ denied*, 01-1511 (La. 8/31/01), 795 So.2d 1213. Here, we find no clear error in the trial court's threshold decision

6

to allow Mr. English to testify as an expert in the field of safety engineering. While Market Basket argues that the trial court erred in accepting certain testimony of Mr. English as it was not based on scientific study, analysis, or otherwise had no rational basis, we find this argument goes to the proper weight to be given to the testimony and address the same below.

*Liability*

Market Basket asserts that the trial court erred in finding it liable for Ms. Jones' accident pursuant to La.R.S. 9:2800.6, especially as there was no evidence that it had actual or constructive notice of any defect in the watermelon display.

Louisiana Revised Statutes 9:2800.6 provides for the liability of a merchant for a claimant's injuries suffered as a result of a condition existing in or on its premises. In *Wyrick v. Golden Nugget Lake Charles, LLC*, 20-665, pp. 7-8 (La.App. 1 Cir. 12/30/20), 317 So.3d 708, 713, the first circuit discussed this statute, as follows:

> Under the Louisiana Merchant Liability Statute, a merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage. La. R.S. 9:2800.6(A).
>
> Merchants are not insurers of their patrons' safety, and a customer is under a duty to use ordinary care to avoid injury. *Cusimano v. Wal-Mart Stores, Inc.*, 04-0248, p. 7 (La.App. 1 Cir. 2/11/05), 906 So.2d 484, 488. A merchant is not absolutely liable every time an accident happens. *Leonard v. Wal-Mart Stores, Inc.*, 97-2154, p. 4 (La.App. 1 Cir. 11/6/98), 721 So.2d 1059, 1061. Thus, in a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
>> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

7

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

La. R.S. 9:2800.6(B)

Under this heavy burden of proof, if any one of these elements cannot be established, the claimant's entire action will fail. *Adams on Behalf of D.K. v. Wal-Mart Stores, Inc. Store #542*, 18-1706, p. 4 (La.App. 1 Cir. 9/27/19), 286 So.3d 452, 454.

"The first element [of La.R.S. 9:2800.6(B)] contemplates whether a condition presented an unreasonable risk of harm." *Bonstell v. Brookshire Grocery Co.*, 09-154, p. 5 (La.App. 3 Cir. 6/3/09), 15 So.3d 1112, 1115. In *Moore v. Murphy Oil USA, Inc.*, 15-96, p. 15 (La.App. 1 Cir. 12/23/15), 186 So.3d 135, 147, *writ denied*, 16-444 (La. 5/20/16), 191 So.3d 1066, the first circuit explained:

In determining whether a condition is unreasonably dangerous, courts have adopted a four-part risk-utility balancing test. This test requires consideration of:

(1) the utility of the complained-of condition;

(2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition;

(3) the cost of preventing the harm; and

(4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature.

*Hutchinson v. Knights of Columbus, Council No. 5747*, 2003-1533 (La.2/20/04), 866 So.2d 228, 235. Simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others. *Reed v. Wal-Mart Stores, Inc.*, 97-1174 (La.3/4/98), 708 So.2d 362, 365.

With regard to a trial court's finding of fact, the appellate standard of review was set forth in *Stobart v. State through Department of Transportation and Development*, 617 So.2d 880, 882 (La.1993), as follows:

8

A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder's determinations:

1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and

2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*See Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987).

After reviewing the record in its entirety, we find manifest error in the trial court's factual finding as to how Ms. Jones' accident occurred. In its oral ruling, the trial court recounted the accident as follows, "When Ms. Jones stepped up onto the pallet guard to get a watermelon from the display, the large cardboard box, it – the box – collapsed, causing her to fall onto the box on her right side and sustained personal injuries for which Market Basket is liable." We find this finding to be clearly wrong as it directly contradicts Ms. Jones' recounting of the accident. Ms. Jones was the only witness as to how her accident actually occurred, and she was clear that the accident occurred when the pallet guard gave way after she stepped on it.

The trial court further found that the watermelon display as a whole presented an unreasonable risk of harm. It found that:

The Court finds it is more than reasonable to foresee that a customer would step up onto the pallet with or without the pallet guard to retrieve a watermelon from its elevated container.

The way the box contained the watermelons was situated, along with colorful arrows on each corner of the box, pointing down to the word, 'Step," and also the pallet guards providing additional width to the top of the pallet practically invites someone to use the pallet as a step. One could easily foresee someone instinctively doing that.

9

However, based on our review of the record, Ms. Jones never claimed that she stepped onto the pallet while attempting to retrieve a watermelon. Moreover, she never claimed that the configuration of the watermelon container played any part in her decision to retrieve a watermelon while standing on the pallet guard.

While the trial court found both Ms. Jones and her son to be credible witnesses, in this instance there was no conflicting testimony for the trial court to consider in reaching its determination as to how the accident occurred as the only eyewitness to the accident was Ms. Jones. Although her son was with her at the time of the accident, he admitted that his attention was on his cell phone; thus, he did not actually see the accident, only its aftermath.

Based on the foregoing, we find that the trial court's findings of fact were not reasonable in light of the record reviewed in its entirety and were clearly wrong with regard to the cause of Ms. Jones' accident. Accordingly, we will now conduct a *de novo* review of the record and render judgment on the merits. *Siverd v. Permanent Gen. Ins. Co.*, 05-973 (La. 2/22/06), 922 So.2d 497.

Ms. Jones testified that the accident occurred as she was attempting to lift a watermelon from a self-serve cardboard container. She stated that the container was sitting on a pallet, which was surrounded by a black barrier, and she stepped on the barrier in order to grab a watermelon from the bottom of the container. Ms. Jones testified that the barrier gave way while she was standing on it, causing her to fall onto her right side against the cardboard container and then to the floor. She claimed that she did not know what the barrier or pallet guard was or that she was not supposed to step on it. She further stated that there were no signs nearby warning against using the pallet guard as a step.

Ms. Jones could not remember where exactly on the pallet guard she stepped. When questioned about the logistics of her fall, the following colloquy took place:

10

Q.    All right.  So I want to understand now.  You said that you stepped on the pallet guard.

A.    Yes, sir.

Q.    Did you step on it sideways?

A.    No, sir.  I –

Q.    Or straight up –

A.    I –

Q.    – with you tiptoes?

A.    No, sir.  I stepped on the pallet guard, my body facing it, my front. My front of my body –

Q.    Okay.

A.    – and I went to get the watermelon.  I went to lift – get the watermelon out of the watermelon bin.  Okay?

Q.    Did you get the watermelon out of it?

A.    It gave out.

Q.    What did?

A.    It came attached [sic] – the black barrier, sir.

Ms. Jones testified that she thought that the pallet guard was a step.  During questioning, she stated:

Q.    Have you ever seen a step that looked like this before?

A.    I never seen it before.  It didn't have signs.  I – I never seen one before –

Q.    Have you ever seen a step that looked like this, about an inch and a half wide?  Have you ever seen a step like that before, ma'am?

A.    I assumed, as a customer, that it was a step.  It was around the pallet.

Q.    As a former manager of Walmart --
A.    We didn't.

Q.    – as a lady with a business administration degree, have you – and a lady that's – how old are you?  You were born in 1978?  40

11

years old? Have you ever seen a step that was an inch and a half wide. You can answer.

A.    Never seen that before.

Mr. English opined that Market Basket's use of the pallet guard in conjunction with the octagonal-shaped container on a square pallet created a hazardous condition that presented an unreasonable risk of harm to Ms. Jones. He further opined that Market Basket's failure to use adequate warnings in conjunction with the display and its failure to properly stock the watermelon display created a hazardous condition. Finally, he testified that based on all of these conditions, it was reasonably foreseeable that the accident suffered by Ms. Jones would occur.

Mr. English admitted that the pallet guard was not designed to be used as a step or to support a customer's weight. He claimed that the true purpose of a pallet guard is to prevent trip and fall accidents caused by customers tripping over a pallet's square edges when it is used in conjunction with an octagonal-shaped container. He opined that if the manufacturer intended the pallet guard at issue to be used as a trip deterrence, then from a product standpoint, it was "a very poor design."

Mr. English opined that from a trip standpoint, the pallet guard at issue was defective because of its height and color, which was six inches and black. He explained that an effective pallet guard should be similar in height to the container sitting on the pallet, and it should be made of a high-visibility color in order to grab the customer's attention. He said that the pallet guard failed in both regards as it was only one inch taller than the pallet and because black is the least reflective color available. In fact, he claimed that the pallet guard actually increased the risks associated with the display by extending the pallet further from the container, thus, increasing the trip hazard. Additionally, he stated that due to the width of the pallet guard, which was accepted as being 1.5 inches, customers would have to stand

12

further from the container when they were retrieving a watermelon, especially if the supply of watermelons was depleted. Mr. English testified that in that case, as in the instant matter, it was foreseeable that a customer would step on the pallet guard in order to get closer to the container.

Mr. English testified that Market Basket failed to communicate that the pallet guard was not a step, which it could have done by using yellow-colored pallet guards, applying warning decals to the pallet guard, or placing warning signs nearby. He stated that yellow is a universally recognized color for pointing out hazards. However, when asked if Ms. Jones would have been deterred from stepping on a yellow pallet guard, Mr. English testified, "I can't say that." He further stated that the use of yellow decals would not be cost prohibitive as they were available online for approximately one dollar apiece. When asked if he knew of any store modifying pallet guards with warning stickers, he stated, "I've seen products in place, but as far as whether they added a decal or that came that way from the manufacturer, I don't have that information."

Mr. English testified that he did not like the use of octagonal-shaped containers on square pallets in public settings, although he recognized that it was a common practice. He stated that through his work as a safety engineer, he knew it was common for retailers, especially in produce areas, to warn of the hazards associated with these displays. When asked if had ever seen a retailer modify a container, Mr. English stated:

> I don't know one way or the other if there's been a store that has modified their containers. I know there's stores that choose not to use those types of containers on their floor – on their sales floor because of the hazards created. But as far as whether some have modified them, I don't know one way or the other.

13

However, to the degree they are used, Mr. English testified that the merchandise displayed in the containers should be replenished. He said that in this instance, the watermelon container was not adequately replenished.

Mr. English testified that based on the container's markings, even the container "manufacturer has recognized some of the issues with this by their markings on the boxes itself." These included red arrows and the words "WATCH STEP" at the corners, which pointed downwards towards flaps marked in red that covered the pallet's exposed edges. Mr. English testified that the effectiveness of the warning was reduced because of missing letters due to holes punched through the container and because of the amount of red labeling used outside of the warning. However, he admitted that Ms. Jones never testified "one way or the other" that her stepping on the pallet guard was due to markings on the container or her misreading of the warning.

Mr. English testified that Market Basket had safer options for displaying watermelons: on slanted produce shelving; stacked on table-height display tables, placed in wall coolers; or stacked on spring-loaded platforms. He stated that the containers could also have been placed directly on the floor, which would have eliminated the display as a trip hazard and the need for pallet guards. Even though Mr. English acknowledged that watermelons arrive at stores in pallet-laden containers; however, he explained that the cardboard containers are designed to protect watermelons during transit, and their octagonal shape "has more to do with the stacking during transit than – than the actual display themselves."

Tammy Gleave, a former Market Basket assistant manager, testified that she filled out the incident report in conjunction with this incident. She stated that Ms. Jones informed her that she had slipped and fallen into the watermelon container. The incident report states, "Customer said she tripped on black plastic pallet cover[.]

14

Fell and hurt her right hip. She stepped on pallet to lean inside watermelon bin. Slipped on black cover and fell[.]"

Ms. Gleave testified that no one has ever informed her that they thought the pallet guard was a step, and she was not aware of anyone, other than Ms. Jones, using one as a step or suffering an injury as a result of stepping on one. She stated that there was a container full of watermelons next to the container in question, and Ms. Jones could have selected a watermelon from that container without having to reach into the container in question.

Roger Hebert, division manager and supervisor of the pertinent Market Basket store, testified that Market Basket utilized pallets when displaying large volume items that were too large to fit on shelving. He stated that the watermelon display consisted of cardboard containers sitting on pallets, with pallet guards surrounding the pallets. He explained that watermelons are shipped to the store in container-laden pallets, which are then displayed in the produce section, pallet and all. Mr. Hebert testified that displaying merchandise on pallets is a customary practice. When asked if the containers could be placed directly on the floor, he stated that operationally, that was not Market Basket's procedure. Mr. Hebert testified that even if the contents of a container was low, Market Basket felt that the remaining merchandise was still accessible. He stated that once a container was low, it was either refilled or removed from the floor once it was emptied.

Mr. Hebert agreed that Market Basket's safety manual required the use of pallet guards in conjunction with pallets. The manual's appendix contained a "Weekly Safety Topic" pertaining to "Pallet Wraps." The document states:

> In the event a pallet is used on the sales floor to display merchandise the following procedure must be followed:
>
> - Immediately upon placement of a pallet on the sale floor, a pallet guard must be employed around the base of the pallet.

15

- All stores must have a supply of pallet guards on hand and no pallet may be placed on the sales floor without a guard.

- The guard must be securely in place around the entire pallet to prevent a person's foot from going into an opening in the pallet.

- The pallet guard must be installed in such a manner as to not create a tripping hazard.

- A supply of pallet guards are maintained at the corporate warehouse and in the event additional guards are needed can be ordered.

Mr. Hebert testified that pallet guards are used to protect a pallet's corners and to prevent customers from catching their feet in a pallet's openings. He agreed that Market Basket did not consider them steps, that they were not designed to support a customer's weight, that there were no warnings against stepping on them; and that there were no signs in the area indicating that assistance should be requested for a customer having difficulty retrieving a watermelon.

Mr. Hebert testified Market Basket neither manufactured nor designed the pallet guard in question. He stated that no one has ever complained that the pallet guard was unsafe or that it should be as tall as the container, which was approximately thirty-six inches. He further stated that he has never seen manufacturers put warnings on pallet guards. Mr. Hebert testified that in his forty-plus years in retail grocery, he had never seen either a pallet guard or a container modified with additional warning stickers. When asked if it was feasible, he stated, "I don't consider that something that would need to be done. I mean, to a normal person that is not a step." Mr. Hebert further testified that during his thirty-plus years of employment with Market Basket, he has never heard of anyone, other than Ms. Jones, using a pallet guard as a step.

Mr. Hebert testified that it was not feasible to place containers of watermelons directly on the floor due to the time it would take to empty the palleted container and

then transfer the watermelons back into the container after it was placed on the floor. He stated that placing watermelons on the floor during the transfer would create an additional hazard. He further stated that Market Basket would not have enough spare employees to transfer watermelons in this manner.

The first element of La.R.S. 9:2800.6 requires a finding that the complained of condition presented an unreasonable risk of harm to Ms. Jones and that the risk of harm was reasonably foreseeable. La.R.S. 9:2800.6(B)(1). As previously stated, a determination of whether a condition presents an unreasonable risk of harm requires us to balance "the gravity and the risk of harm against the individual and societal utility and the cost and feasibility of repair." *Chambers*, 85 So.3d at 597. Thus, we will apply each factor of the risk-utility balancing test to the facts of this matter.

### *Utility of the Pallet Guard*

Market Basket used pallet guards on every pallet placed on its sales floor to prevent customers from tripping by catching their feet in the pallet openings. As pallet guards are used to prevent accidents, we find that they serve a high social function.

In essence, pallet guards close off the pallet's fork openings by which pallet jacks or forklifts move the pallet. Although Mr. English claimed that a pallet guard's true purpose was to prevent trip and fall accidents, we note that he never mentioned the hazards posed by these openings. Our caselaw is replete with cases involving claims for injuries wherein customers fell after catching their feet in unguarded pallets used in commercial stores. *See Marks v. Schultz*, 20-197 (La.App. 1 Cir. 12/12/20), 316 So.3d 534; *Upton v. Rouse's Enterprise, LLC*, 15-484 (La.App. 5 Cir. 2/24/16), 186 So.3d 1195, *writ denied*, 16-580 (La. 5/13/16), 191 So.3d 1057; *Moore*, 186 So.3d 135; *Primrose v. Wal-Mart Stores, Inc.*, 48,370 (La.App. 2 Cir. 10/2/13),

17

127 So.3d 13; and *Darton v. Kroger Co.*, 30,771 (La.App. 2 Cir. 8/25/98), 716 So.2d 974. We further note that this matter did not involve a trip and fall, and that the majority of Mr. English's testimony was geared toward the deficiency of the pallet guard's design as a trip deterrent.

### *Likelihood and Magnitude of Harm; Open and Obvious Condition*

Pallets do not inherently pose an unreasonable risk of harm. *Reed v. Home Depot USA, Inc.*, 37,000 (La.App. 2 Cir. 4/9/03), 843 So.2d 588, *writ denied*, 03-1638 (La. 10/10/03), 855 So.2d 345. We find, as did the court in *Upton*, 186 So.3d at 1202, that the watermelon display at issue was one that "any customer would reasonably expect to encounter in the produce department of a grocery store, and it presents no unreasonable risk of harm to a customer exercising reasonable care."

Here, Ms. Jones chose to step on the pallet guard even though its width, 1.5 inches, was obvious and apparent to all who approached the display. Ms. Jones admitted that she had never seen a step this narrow, yet she assumed, in the absence of warning signs, that the pallet guard was a step because it encircled the pallet. We find this explanation as illogical as assuming, as noted by Market Basket, that a thick baseboard running along a wall is meant to be used as a step for reaching higher up the wall. The risk that one's foot would slip off of the narrow strip, when considering that only a small fraction of the foot would rest on the surface of the strip, is one that we find would be open and obvious to any reasonable person. Further, based on the fact that Market Basket had no prior reports of any incidents involving pallet guards, much less any complaints that they were being used as steps, we find the likelihood of a customer being harmed by them was slight.

### *Cost of Preventing Harm*

Although Mr. English claimed that the cost of modifying the pallet guard was not cost prohibitive, approximately one dollar per decal, we disagree. As far as Mr.

18

English recommended the application of warning decals to the pallet guard, he failed to indicate how many decals should be placed on each pallet guard or the best application location. When considering the number of pallet guards required for each display (four), the possible number of pallets located on Market Basket's sales floor, and the number of stores owned by it,[1] the solution raised by Mr. English could definitely prove costly. He further provided no analysis relative to the cost of replacing Market Basket's black pallet guards with yellow pallet guards that are similar in height to the containers or for the addition of warning signs near the displays. Additionally, although Mr. English recommended modification of the containers, we note that these are provided by the suppliers; thus, Market Basket did not choose the containers at issue. Moreover, there was no testimony from Ms. Jones that the container or its markings played any part in her accident.

Additionally, Ms. Jones could have avoided the harm that befell her had she chosen a watermelon from the container located right beside the container at issue. This container, as shown in the photograph provided by Ms. Jones, was full of watermelons, and she easily could have selected a watermelon from that container without having to reach down inside it. *See Pryor v. Iberia Parish Sch. Bd.*, 10-1683 (La. 3/15/11), 60 So.3d 594.

### *Nature of Plaintiff's Activity*

We find that Ms. Jones' action of selecting a watermelon from the container was neither remarkable in terms of its social utility nor inherently dangerous. *Primrose*, 127 So.3d 13. However, as stated above, Ms. Jones could have avoided this accident had she selected a watermelon from the top of the neighboring container.

---

[1] According to its safety manual, the Market Basket store at issue is operated by Retail Investors of Texas, Ltd. d/b/a Market Basket and Mercado de Familia, which operates numerous stores in Texas and Louisiana. The July 12, 2017 customer incident report identified the store at issue as Store # 36.

It was her action in attempting to use the 1.5-inch-wide pallet guard, a noted open and obvious hazard, as a step that was inherently dangerous.

Additionally, "[i]n establishing whether a condition presents an unreasonable risk of harm, courts consider the circumstances and the particular plaintiff involved, and any specialized or superior knowledge that plaintiff may possess." *Fisher v. Villere*, 20-242, p. 11 (La.App. 4 Cir. 2/24/21), 313 So.3d 1282, 1290 (citing *Celestine v. Union Oil Co. of Cal.*, 94-1868 (La. 4/10/95), 652 So.2d 1299). In this instance, Ms. Jones testified that she was employed for eight years as an assistant manager at a Lake Charles Super Wal-Mart, which included a grocery store. She admitted that her job duties included supervising both employee and customer safety and that through her safety training, she knew it was unsafe to climb on shelving or pallets. However, Ms. Jones claimed that every store managed its pallets differently, and she had never seen a pallet wrapped with a pallet guard. She further stated, "We kept – we were taught to keep our bins filled to where it doesn't create a safety hazard for the customer." However, despite the fact that there was a full container of watermelons to her left, she chose to step on the 1.5-inch-wide pallet guard in order to grab a watermelon from the bottom of a nearly empty container.

After applying the risk-utility balancing test, we find that the pallet guard did not present an unreasonable risk of harm as its social utility, the prevention of accidents, outweighed the slight risk posed by its misuse, as evidenced by the absence of reported accidents prior to that experienced by Ms. Jones. The pallet guard was open and obvious to all, and had Ms. Jones exercised ordinary care, she could have avoided the accident had she chosen a watermelon from the neighboring container. As Ms. Jones has failed to prove the first element of La.R.S. 9:2800.6, we need not address the remaining elements or Market Basket's remaining

20

assignment of error. Accordingly, we find that Market Basket is not liable to Ms. Jones for the damages suffered by her as a result of the July 12, 2017 accident.

## DECREE

Based on the foregoing, the judgment of the trial court in favor of the plaintiff, Lashondra Jones, is reversed; and judgment is, hereby, rendered in favor of the defendant, Market Basket Stores, Inc, dismissing Ms. Jones' claims against it with prejudice. Costs of this appeal are assessed to Lashondra Jones.

## REVERSED AND RENDERED.

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

NUMBER 21-354

LASHONDRA JONES

VERSUS

MARKET BASKET STORES, INC.

CONERY, Judge, concurs in part, dissents in part, and assigns reasons.

I join in the majority opinion to the extent it maintains the trial court's decision to accept Jason English as an expert in the field of safety engineering. Like the majority, I find no clear error in the trial court's decision to do so.

However, I am constrained to respectfully disagree from the remainder of the majority opinion. Rather, I find that the trial court's judgment must be affirmed pursuant to the manifest error standard of review.

The majority preliminarily determines that a *de novo* review is warranted due to its finding that the trial court erroneously stated that "the large cardboard box, it - the box – collapsed, causing [Ms. Jones] to fall onto the box on her right side and sustained personal injuries[.]" It was, of course, the pallet guard that collapsed as Ms. Jones stepped on it, not the box. I find that the majority opinion is based primarily on this coupling of words in the trial court's ruling. Rather, the record fully supports the trial court's judgment using the appropriate manifest error standard of review.

First, the supreme court has explained that it is a "well-settled rule that the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment." *Bellard v. American Cent. Ins. Co.*, 07-1335, p. 25 (La. 4/18/08), 980 So.2d 654, 671.

Moreover, the record is clear from Ms. Jones' testimony that when she stepped on the pallet guard in order to retrieve a watermelon, it gave way, causing her to fall, doing so "against the watermelon bin on [her] right side." Ms. Jones specifically testified that she "stepped on it (the pallet guard) I didn't slip on it." As she stepped on the pallet guard, it "collapsed underneath [her]." Ms. Jones testimony was uncontradicted in this regard, and the photographic evidence supports Ms. Jones' account of the pallet guard collapsing. The phots clearly show the pallet guard away from the box, consistent with Ms. Jones standing on it, causing the pallet guard to give way and separate from the box as shown in the pictures in evidence.

Additionally, Mr. English explained that Market Basket's use of the watermelon bin placed atop the pallet guard, as encountered by Ms. Jones, posed a risk in several respects. Not only did the pallet guard pose a tripping hazard, but it elevated the watermelon bin and placed the customer at a greater distance from the produce, making it more difficult to retrieve the produce. Those reaching for a watermelon when the bin was depleted would naturally be inclined to step onto the pallet guard in order to have better access to the produce, just as Ms. Jones did. Despite that hazard, Mr. English explained, Market Basket failed to place adequate warning signs on the pallet guard or the box. The box instead had downward pointing arrows which read "step," leading Ms. Jones to believe that the pallet guard provided a "step."

These combined conditions, along with Market Basket's failure to restock the bin more quickly, posed a hazardous condition, according to Mr. English. And, of course, Ms. Jones' accident resulted from Market Basket's choice to use the bin/pallet guard display to sell watermelons. Market Basked called no opposing expert witness, and the testimony of Ms. Jones and Mr. English on these points was uncontradicted.

Given the presence of this evidence in the record, and especially the trial court's opportunity to evaluate the credibility of both Ms. Jones and Mr. English at trial, I find no manifest error in the trial court's ruling and would therefore affirm both the trial court's finding of liability and its award of damages. *See Garrett v. DG La., LLC*, 21-351 (La.App. 3 Cir. 12/15/21), 330 So.3d 1145, *writ denied*, 22-121 (La. 3/15/21), _ So.3d _ (2022 WL 780489).